**SUBPOENA DUCES TECUM**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**Case No.: 1:22-cv-07059**
**<u>Honorable Rebecca R. Pallmeyer</u>**

**GRACIELA DELA TORRE,**
Plaintiff,

v.

**NIPPON LIFE INSURANCE COMPANY OF AMERICA, DISABILITY MANAGEMENT SERVICES, INC., and ALL AFFILIATED INVESTIGATORS OR THIRD-PARTY SURVEILLANCE COMPANIES,**
Defendants.

---

**SUBPOENA DUCES TECUM FOR DISCLOSURE OF SURVEILLANCE RECORDS, PRIVATE INVESTIGATOR EXPENSES, AND INTERNAL COMMUNICATIONS**

**TO:**

- **Disability Management Services, Inc. (DMS)**

- **Nippon Life Insurance Company of America**

- **Any third-party private investigation firms or surveillance agencies hired to investigate Plaintiff**

**YOU ARE HEREBY COMMANDED** to produce and submit to the Court and Plaintiff **all documents, records, and materials related to any and all surveillance, private investigations, and monitoring efforts conducted against Plaintiff, including but not limited to:**

**1. IDENTITY OF PRIVATE INVESTIGATORS & SURVEILLANCE TEAMS**

- A complete list of **all private investigators, agencies, and third-party vendors** retained by Disability Management Services (DMS) and/or Nippon Life for the purpose of investigating Plaintiff.

- All **contracts, agreements, and statements of work** detailing the nature and scope of surveillance conducted.

1

## 2. FINANCIAL RECORDS OF SURVEILLANCE EXPENSES

- **Invoices, receipts, and payment records** reflecting how much Nippon Life and/or DMS **spent on private investigators and surveillance efforts** targeting Plaintiff.

- **Budget approvals and internal memos** authorizing payments for monitoring activities.

## 3. REPORTS FROM PRIVATE INVESTIGATORS & SURVEILLANCE TEAMS

- Copies of **all surveillance reports, logs, videos, photographs, GPS tracking records, and any related documentation** created in relation to Plaintiff.

- **Internal communications, memos, and instructions** given to surveillance teams regarding how to track, monitor, or record Plaintiff.

## 4. JUSTIFICATION FOR SURVEILLANCE & DECISION-MAKING DOCUMENTS

- **Internal emails, meeting notes, and decision-making records** discussing why surveillance was conducted on Plaintiff.

- Documentation of **who authorized the surveillance, why it was deemed necessary, and what findings resulted from these efforts.**

## 5. LEGAL COMMUNICATIONS REGARDING SURVEILLANCE

- **Any and all communications between Disability Management Services (DMS), Nippon Life's legal team, and third-party surveillance firms** regarding Plaintiff.

- All documents discussing the **legal risks, ethical considerations, or potential consequences** of their surveillance efforts.

---

### DELIVERY & COMPLIANCE INSTRUCTIONS

Defendants must **submit all requested records within five (5) days** of receipt of this subpoena using the following methods:

1. **E-FILE all requested documents with the Court via CM/ECF** under Case No. **1:22-cv-07059.**

2. **Hand-deliver a hard copy** to the U.S. District Court Clerk's Office, Northern District of Illinois, at [Court Address].

3. **Mail a certified hard copy to Plaintiff at:**

2

**Graciela Dela Torre**

653 Wing St, Elgin IL 60123

4. **Email a complete digital copy to Plaintiff at:
GMESTIZA1@GMAIL.COM**

Failure to comply **within five (5) days** may result in a **motion to compel production, sanctions, and any other relief deemed appropriate by the Court.**

**EXHIBIT A: Letter from Jennifer Johnson (Disability Management Services, Inc.)**
Attached hereto as **Exhibit A** is a letter from Jennifer Johnson at Disability Management Services, Inc., which demonstrates Defendant's pattern of misrepresentation and bad faith.

Respectfully submitted,

/s/ Graciela Dela Torre _____ Date: Feb 03, 2025

Pro Se Plaintiff

653 WING ST, ELGIN IL 60123

(630) 670-5914

GMESTIZA1@GMAIL.COM

3

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GRACIELA DELA TORRE,
Plaintiff,

v.

NIPPON LIFE INSURANCE COMPANY OF AMERICA,
DISABILITY MANAGEMENT SERVICES, INC.,
AND ALL AFFILIATED INVESTIGATORS OR THIRD-PARTY SURVEILLANCE COMPANIES,
Defendants.

Case No.: 1:22-cv-07059
Honorable Rebecca R. Pallmeyer

CERTIFICATE OF SERVICE

I, Graciela Dela Torre, hereby certify that on February 3, 2025, I served a true and correct copy of the MOTION TO NOTIFY THE COURT OF SUBPOENA DUCES TECUM via electronic mail and U.S. Mail to the following recipients:

Recipients Notified via the Court's CM/ECF System:

Counsel for Defendant:

- Justin Aaron Wax Jacobs – j-waxjacobs@nipponlifebenefits.com

- Ambria Dominise Mahomes – docketgeneral@faegredrinker.com, legalresourcehub@faegredrinker.com, ambria.mahomes@faegredrinker.com

- Matthew M Morrissey – alice.continpage@faegredrinker.com, matthew.morrissey@faegredrinker.com

Former Counsel for Plaintiff:

- Kevin E. Probst (Dabdoub Law Firm) – kprobst@longtermdisability.net

- Edward Philip Taric Dabdoub – paralegal@longtermdisability.net, geneses@longtermdisability.net, eddie@longtermdisability.net, nina@longtermdisability.net

- Justin R. Lewicky – kwojtowicz@ankinlaw.com, jlewicky@ankinlaw.com, smazariegos@ankinlaw.com

1

Notice of electronic filing will be sent via the Court's CM/ECF system to all registered counsel of record in this case.

Recipients Notified via Regular Email and Certified Mail:

Disability Management Services, Inc. (DMS):

- Jennifer Johnson – jjohnson@dmsmanagement.com

- General Counsel – legal@dmsmanagement.com

- Mailing Address: 260 Charles Street, Waltham, MA 02453

I certify under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

/s/ Graciela Dela Torre
Pro Se Plaintiff
653 Wing St, Elgin, IL 60123
(630) 670-5914
GMESTIZA1@GMAIL.COM

Dated: February 3, 2025

2



Disability Management Services, Inc.
1350 Main Street, Springfield, MA 01103
Main #844-914-1788 • Fax #413-747-1545

March 29, 2022

Graciela Dela Torre
653 Wing Street
Elgin, IL 60123

RE:     Long-Term Disability (LTD) claim
        LTD Claim #:  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

Dear Ms. Dela Torre:

As you are aware, Disability Management Services is the claims advisory agent for Nippon Life Insurance Company of America, the Long-Term Disability insurance carrier for Nippon Express USA. We are writing to provide you with the status of your appeal on your claim for LTD benefits. We have completed our review of your appeal and are maintaining the decision that you are not eligible for ongoing Long Term Disability benefits. Our explanation is below.

In an email dated November 19, 2021, you requested reconsideration of the adverse decision regarding your LTD claim. In accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), we must provide a full and fair review of the claim and the adverse benefit determination upon receipt of the request for reconsideration. As part of the full and fair review, we must not afford deference to the initial adverse claim decision, and the review must be conducted by an individual other than the one who made the initial adverse benefit determination, and is not a subordinate of such individual.

**No Guidelines/Protocols Relied On**

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file.  Other than what is set out in the policy, we did not rely upon any internal rules, guidelines, protocols, standards or other similar criteria in reaching this claim determination.

We have reviewed the documentation in your claim file in addition to the issues outlined in the appeal email and additional supporting documentation provided and obtained. We retained an independent physician Board Certified in Physical Medicine and Rehabilitation to assist us with medical reviews. We also had our Vocational Specialist conduct a vocational review. This information is outlined below.

**History**

Our review notes that you are currently 43 years old and ceased working as a Senior Air Exporter (Wholesaler II) on May 1, 2019, due to right carpal tunnel syndrome and epicondylitis. Your claim for LTD benefits was previously approved with benefits beginning June 30, 2019.

An evaluation for the change in the definition of disability was initiated beginning January 19, 2021. Updated claim forms were requested to be completed from you and your doctor.

On May 17, 2021, we received an Attending Physician's Statement completed by Vineet Singla, D.O. (Family Medicine) dated May 14, 2021. Dr. Singla reported diagnoses of bilateral carpal tunnel syndrome and right elbow epicondylitis. Dr. Singla indicated you had no limitations to sit, stand, or walk and could use both lower extremities for repetitive movements. However, he indicated you could never lift/carry any weight and could not use either upper extremity for repetitive tasks of simple grasping, pushing/pulling or fine manipulation. He reported you could never climb, stoop, kneel, crouch, crawl, handle, finger or feel and could occasionally balance and reach.

On May 19, 2021, we received a Resource Questionnaire completed by you dated May 14, 2021. On this form, you reported you were unable to return to any type of work due to bilateral hand weakness and pain, with an inability to handle small objects, difficulty writing and an inability type for a short period. You reported you could drive short distances; however, you were unable to lift your arms, and could not brush your hair. You listed treating at Elmhurst Clinic and Elmhurst Neurosciences.

Copies of your medical records were requested from Edward-Elmhurst Health Clinic and Edward-Elmhurst Neurosciences. Only one medical record was received during this timeframe which was dated January 8, 2021.

In various emails, you had also provided:

- Progress notes dated December 19, 2020, and January 14, 2021, from Nabihah Khan PA.
- After visit summary dated January 8, 2021, from Elizabeth Baldys, PA.
- Letter and after visit summaries dated June 29, 2021, and October 19, 2021, from Karen Kowalczyk, APN.
- Physical therapy referral from Edward-Elmhurst Clinic dated June 29, 2021.

Additional medical records were independently requested from Edward-Elmhurst Clinic on September 27, 2021, to include your most recent office visit notes; however, these records were not received timely. A special authorization form was required and received on October 25, 2021.

In the interim, your file underwent an Internal Clinical Review completed by our Medical Consultant on October 27, 2021. This review also included review of After Visit Summaries previously provided by you dating back to August 29, 2020. It was noted that the After Visit Summaries did not have any clinical information and mainly consisted of your complaints and requests for medication refills. The only physical exam was dated January 8, 2021, which was documented as normal. The Medical Consultant opined that the restrictions/limitations outlined by Dr. Singla were excessive and there were no records from him for review to validate his opinion of your capacity. It was also noted that there were no records pertaining to the right carpal tunnel release surgery you underwent on January 24, 2020. Overall, there was felt to be a lack of objective medical findings from any physical examinations to support ongoing disability.

As part of the ongoing review of your claim, you were also requested to provide documentation regarding the status of your Social security Disability (SSD) claim. In an email dated May 14, 2021, you reported you made an appointment to reapply for SSD benefits scheduled for June 24, 2021; as you had missed the timeframe to appeal. On June 17, 2021, your file was referred to Allsup (our Social Security vendor). On June 18, 2021, you provided documentation from the Social Security Administration (SSA) confirming you had scheduled to reapply for SSD benefits on June 24, 2021, as reported. Allsup closed your file on September 14, 2021, due to lack of response from you. On October 21, 2021, you provided a letter from the SSA dated October 18, 2021, asking you for additional information to be submitted by October 28, 2021. You also requested Allsup's contact information.

Your LTD benefits were terminated effective November 30, 2021, as outlined in a letter dated November 18, 2021. In this letter, it was outlined that the information available for review was insufficient to support ongoing restrictions/limitations. It was also noted that you had failed to pursue SSD benefits as required by the plan. It was also noted that the policy requires that you remain under the regular care of a doctor and in our request for records, only 1 office visit was received which was documented as normal. For these reasons, it was determined that you no longer met the policy requirements for continued LTD payments.

You were notified of the termination of your LTD benefits via email on November 18, 2021. In response, you provided additional information including another copy of the October 18, 2021 SSA letter already on file, an After Visit Summary and progress note from Daryl O'Connor, MD (Orthopedic Surgeon) dated November 5, 2021. You stated you also contacted Allsup as your application for SSD benefits was still open.

On November 19, 2021, you were advised that if you wished to appeal the termination of your LTD benefits, you must submit in writing that you intended to appeal, the reasons why you disagreed with our determination and provide additional information in support of your claim. In an email response from you on that date, you stated you were making a formal request to reopen your claim and release your benefits. You reported that your claim should not have been closed as you were still in medical treatment and did not fail to apply for SSD benefits. You stated the closure of your claim was a violation of federal and state laws that protect people with disabilities.

An appeal acknowledgement letter was sent to you on November 23, 2021. All of the medical information and other information reviewed and considered on appeal is outlined below.

## Data Reviewed for the Appeal

- Your LTD claim file including but not limited to plan documents, medical records, claim correspondence, claim notes, claim forms, and the termination decision letter dated November 18, 2021
- Email from you dated November 18, 2021, including:
  - Letter from the Social Security Administration dated October 18, 2021

3

- o After Visit Summary and progress note from Daryl O'Connor, MD (Orthopedic Surgery) dated November 5, 2021
- Email from you dated November 19, 2021, requesting to appeal the termination of your LTD benefits
- Medical records requested by our office from Edward-Elmhurst Clinic covering the period of May 14, 2021, through June 29, 2021
- Email addressed to you from Allsup dated November 24, 2021
- ATI Physical Therapy schedule covering the period of October 20, 2021, through December 29, 2021.
- Email correspondence between our office and Allsup on December 1, 2021
- ATI Physical Therapy progress note dated November 18, 2021
- Letter dated December 18, 2021, pertaining to your Social Security Disability (SSD) claim.
- Surveillance Report dated December 8, 2021, and corresponding video completed by Covent Bridge Group documenting activity overserved over the period December 1, 2021, through December 3, 2021
- Independent Medical Record Review report completed by Erich Gottwald, DO (Board Certified in Physical Medicine & Rehabilitation) on January 17, 2022
- Indexed Predisability Earnings calculation worksheet completed by our Financial Consultant on January 19, 2022
- Emails from you over the period of January 18, 2022, through January 27, 2022, with various attachments including:
    - o Email from you to your Human Resources department dated May 7, 2019
    - o Medical records from Edward-Elmhurst Clinic covering the period of February 28, 2019, through September 13, 2019.
    - o Letters from Vineet Singla, MD (Family Medicine) dated April 1, 2019, and June 24, 2019
    - o Letters from Karen Kowalczyk, APRN (Family Medicine) dated May 1, 2019, and January 15, 2020
    - o Letters from Alex Behar, MD (Physical Medicine & Rehabilitation) dated June 18, 2019, and December 19, 2019
    - o ATI Physical Therapy progress notes covering the period of March 18, 2019, through July 10, 2019, and progress notes dated November 18, 2021 (duplicate), and January 17, 2022
    - o After visit summaries from Dr. Behar dated July 18, 2019, and December 17, 2021; including nerve conduction study and electromyography procedure notes dated December 17, 2021
    - o After visit summary from Raymond Janevicius MD (Plastic & Reconstructive Surgery) dated January 24, 2020
    - o Work Status Reports completed by Dr. Janevicius dated February 13, 2020, and March 9, 2020.

4

- o After visit summary from Dr. Sathyakir Madoori, MD (Emergency Medicine) dated February 14, 2020
  - o List of appointment dates for the period of March 4, 2020, through March 12, 2020
  - o After visit summary from Dr. Singla dated May 14, 2021
  - o Referral to orthopedic surgery from Edward-Elmhurst Clinic dated June 29, 2021
  - o Physical therapy referral and wrist splint order dated October 19, 2021
  - o Care and use of new orthosis form dated October 20, 2021
  - o Physical therapy schedule from ATI Physical Therapy covering the period of October 21, 2021, through February 10, 2022.
  - o After visit summary and progress note from Daryl O'Connor, MD (Orthopedic Surgeon) dated November 5, 2021
  - o After visit summary and progress note from Ms. Kowalczyk dated November 30, 2021
  - o MyChart Visit summary from Dr. Behar dated December 17, 2021
  - o Progress note, after visit summary and referral for physical therapy from Dr. O'Connor dated January 19, 2022
  - o After Visit Summary and progress note from Dr. Singla dated January 21, 2022, with physical therapy referral
  - o Follow-up visit appointment details with Dr. O'Connor dated February 10, 2022
- Independent Medical Record Review Addendum report completed by Erich Gottwald, DO (Board Certified in Physical Medicine & Rehabilitation) dated February 3, 2022.
- Employability Assessment report completed by our Vocational Specialist dated February 8, 2022, and corrected report dated March 18, 2022.
- Emails from you dated February 7, 2022, and February 8, 2022, including copies of:
  - o Preoperative COVID test results dated February 7, 2022
  - o Screen shot regarding office visits planned for February 17, 2022, and March 15, 2022
  - o Letter from Allsup dated February 1, 2022
  - o After visit summary and progress note from Ms. Kowalczyk dated February 8, 2022
  - o Visit detail from MyChart regarding surgery date of February 28, 2022
- Email from you dated March 1, 2022, with attachments that could not be opened.
- Email from you dated March 25, 2022, including:
  - o Progress note and after visit summary from Ms. Kowalcyzk dated February 8, 2022 (duplicate)
  - o Visit details regarding expected orthopedic procedure scheduled with Dr. O'Connor for February 28, 2022
  - o MyChart admission note and operative report dated February 28, 2022
  - o After visit summary and progress note with Dr. O'Connor and Stephen Ayd, PA-C dated March 9, 2022

5

o After visit summary and progress note with Dr. Behar dated March 15, 2022
o Appointment details with Dr. Behar scheduled for April 12, 2022
o Post-operative appointment details with Dr. O'Connor scheduled for April 13, 2022

## Relevant Occupational Duties

Your occupation was identified as a Senior Air Exporter (Wholesaler II). However, the definition of disability under the policy changed after 24 months of disability benefits. Therefore, effective June 30, 2021, you must be considered disabled from any gainful occupation in order to remain eligible for LTD benefits.

## Relevant Policy Provisions

Plan provisions utilized during the appeal review include but are not limited to:

**Disability; Disabled** *(for Long Term Disability Insurance) means your inability, solely and directly because of sickness or injury:*

- *during the Benefit Waiting Period and the two-year period immediately following the Benefit Waiting Period:*

  - *if not working, to perform the majority of the material duties of your normal job; or*

  - *if working, to earn more than 80% of your Indexed Predisability Earnings; and*

- *after completion of the Benefit Waiting Period and the two-year period immediately following the Benefit Waiting Period:*

  - *if not working, to perform the majority of the material duties of any job that reasonably fits your background and training; or*

  - *if working, to earn more than 66 2/3% of your Indexed Predisability Earnings.*

**Indexed Predisability Earnings**

*Your monthly Predisability Earnings will be adjusted to reflect changes in the cost of living based on the Consumer Price Index as published by the United States Department of Labor. The maximum adjustment made will be subject to an annual maximum of 10%. Adjustments made as a result of the changes in the Index will be effective as of the anniversary date of Disability each year.*

**Payment Termination**

6

*Except as described below in Continued Payments, your Disability Payment Period will end on the earliest of:*

- *the date of your death; or*
- *the date your Disability ends*
- *the date you fail to provide any required proof of your Disability; or*
- *the date you fail to submit to any required medical examination; or*
- *the date you fail to report your Specified Income Sources or General Income Sources; or*
- *the date ten days after receipt of notice from Us if you fail to pursue Social Security benefits as listed in the CLAIM PROCEDURES Section; or..."*

**"Continued Payments**

*In some instances your Disability Payment Period may be continued beyond the normal termination date. These instances are discussed under these headlines:*

- ***Recurring Disability..."***

**"Recurring Disability**

*A Recurring Disability will exist if:*

- *after you have completed a Benefit Waiting Period, you cease to be disabled; and*

- *you then return to Active Work; and*

- *while insured for Long Term Disability Insurance but before you have been back at Active Work for six continuous months, you are again Disabled; and*

- *your current Disability and the Disability for which you completed the Benefit Waiting Period result from the same or related causes.*

**Individual Termination**

- *Your insurance will cease on the earliest of:*

- *the date the Group Plan terminates; or*

- *the end of the calendar month in which you cease to belong to a class for which insurance is provided; or*

- *the end of the calendar month in which you cease to be a Member; or*

- *the end of the calendar month in which you cease Active Work.*

---

7

*If you cease Active Work because of sickness or injury, your plan might provide for a limited continuation of not more than six months. If you cease Active Work because of a layoff or leave of absence, insurance my be continued for one month.*

***Active Work; Actively at Work*** *means the active performance of all of a Member's normal job duties at the Planholders' usual place or places of business.*

*This requirement will be waived when you:*

- *are absent from Active Work because of a regularly scheduled day off, holiday, or vacation day; and*
- *were Actively at Work on your last scheduled workday before the date of your absence; and*
- *were capable of Active Work on the day before the scheduled effective date of your insurance under this plan.*

## Analysis of Medical and Other Evidence

In order to assist with clarifying your functional capacity, we requested an activity check to determine your current level of daily functioning. We also referred all of the medical information available, including any new medical information provided by you, to a physician Board Certified in Physical Medicine and Rehabilitation for review. An Independent Medical Record Review report and Addendum report were received and reviewed. Additionally, our Vocational Specialist completed an Employability Assessment report.

On November 23, 2021, our office received the medical records that had previously been requested on September 23, 2021, from Edward-Elmhurst Clinic; which included progress notes from Vineet Singla, DO (Family Medicine) dated May 14, 2021, and Karen Kowalcyzk, APRN (Family Medicine) dated June 29, 2021.

As you did not provide much information in your November 19, 2021 email request to appeal, we left you a voice message and emailed you on November 29, 2021 requesting you contact us to discuss your LTD appeal. You replied on that date stating your telephone number was out of service. You stated you would need a complete copy of all of the medical records in your file in order to determine what medical information was missing. You also noted that were working with Allsup and provided an email from Allsup dated November 24, 2021. The email from Allsup thanked you for submitting the Allsup authorization and indicated that they were reviewing your claim and would follow up shortly. You also attached a schedule from ATI Physical Therapy that documented therapy dates planned for the period of October 20, 2021, through December 29, 2021.

On November 30, 2021, we emailed you a copy of all of the medical documentation within your LTD claim file. On December 1, 2021, you indicated you were unable to view the documents. As such, we printed the documentation and sent it via UPS next day air on December 2, 2021.

---

8

Our office also confirmed with Allsup via email on December 1, 2021, that they received the authorization forms from you on November 24, 2021, and moved your file into an active status on November 30, 2021.

Over the period of December 6, 2021, through December 23, 2021, we corresponded with you via email regarding issues with receiving the UPS delivery. Due to delays and concerns with our review timeframe, a 45-day voluntary extension was agreed upon. In an email dated December 23, 2021, you confirmed the UPS package had been delivered; however, you reported it included only 20 pages of information and was badly damaged. You stated you would go to the library to view the medical information via email. During this time, you also provided a progress note from ATI Physical Therapy dated November 18, 2021, and a letter dated December 18, 2021 pertaining to your SSD claim. The SSD information indicated you had an appointment/evaluation scheduled with Roopa Karri, MD on December 28, 2021.

As the prior link with medical records that was emailed to you had expired, a complete copy of your medical records was again emailed to you on December 28, 2021. In this email, we requested that you provide all of the medical information that you wished for us to consider in our appeal review by January 7, 2022, or contact our office if additional time was needed. We emailed you on January 4, 2022, reminding you of the January 7, 2022 deadline.

In the interim, in order to gain an understanding of your daily functioning, we requested an activity check which was completed by Covent Bridge Group covering the period of December 1, 2021, through December 3, 2021. A report dated December 8, 2021, and corresponding video were received and reviewed by our office.

On December 1, 2021, you were seen at 8:42 a.m. driving a black Honda Pilot and pulled into your driveway. You walked to the garage and unlocked it with your right hand, then lifted it open with your right hand. At 12:03 p.m. you departed the area in your vehicle where you went to Elgin Mental Health Center. You departed there at approximately 1:35 p.m. and were observed going back to your residence.

On Thursday, December 2, 2021, you were observed exiting your residence at 7:19 a.m., and departed the area accompanied by an unidentified male companion believed to be your husband. You were noted to wear a brace on your left wrist. You were noted to go to a 7-Eleven in Lombard, IL, where your companion exited the vehicle to shop in the store while you waited in the driver's seat. Surveillance was disrupted by morning traffic but was later re-established as you were in route back to your residence. When you returned to your residence, you were documented using both hands to hang and adjust lawn ornaments around your house. At 1:32 p.m., you exited the residence again accompanied by a younger male companion believed to be your son. You were followed for approximately 40 minutes before heavy afternoon traffic disrupted pursuit. Attempts to re-establish visual contact were unsuccessful, so efforts were relocated back to your residence. As you did not return by 3 p.m. surveillance efforts were discontinued.

On Friday, December 3, 2021, you were observed exiting your residence and carrying several garbage bags, which you loaded into trash cans by the curb. You were noted to wear braces on

9

both wrists. You departed the area accompanied by a male believed to be your husband where you went to a residence in Bull Valley, IL. You were then followed back toward your residence; however, visual contact was lost. You were seen returning home at approximately 10:20 a.m. At that time, you were documented carrying multiple shopping bags, as well as adjusting lawn ornaments. At 12:02 p.m. you were documented dragging the empty trash cans back to your driveway before departing the area in your vehicle again. Surveillance was disrupted and you were observed returning to your residence carrying more shopping bags at around 1:44 p.m. At approximately 3:25 p.m, you were observed leaving your residence but were lost in heavy afternoon traffic and surveillance was discontinued.

Since we did not receive a response from you with additional medical information and/or a request for additional time to submit medical documentation, your file was referred for an Independent Medical Record Review based upon the information available to date on January 10, 2022. An Independent Medical Record Review report completed by Erich Gottwald, DO (Board Certified in Physical Medicine & Rehabilitation) dated January 17, 2022, was received and reviewed.

As part of his review, Dr. Gottwald attempted to contact your treating providers, which included Vineet Singla, DO (Family Medicine), Karen Kowalczyk, APRN (Family Medicine), Raymond Janevicius, MD (Plastic & Reconstructive Surgery) and Dr. Daryl O'Connor, MD (Orthopedic Surgery). Dr. Gottwald spoke with Dr. Janevicius's nurse, Tracy on January 11, 2022, who indicated you were last seen on March 9, 2020. As you had not been seen in over a year and a half, she stated they were not able to comment on any type of disability. Dr. Gottwald was unsuccessful in getting a response from Dr. Singla, Ms. Kowalczyk, or Dr. O'Connor.

Dr. Gottwald summarized that you had been diagnosed with bilateral lateral epicondylitis and bilateral carpal tunnel syndrome. You had been seen by a physiatrist and instructed in the use of ergonomics and received injections to your right elbow. An EMG (electromyography) on June 18, 2019, showed moderate carpal tunnel on the right and mild on the left. Due to the findings on the right, you had a right carpal tunnel release in January 2020; however, post-operatively you were still having right elbow pain and left elbow and hand pain. It was noted you had an EMG of the left upper extremity done on December 13, 2019, which was negative. You were noted to be following up with your primary care physician, physiatrist and orthopedist. The plan was to get a new EMG and continue therapy.

Dr. Gottwald commented that a progress note from Dr. Daryl O'Connor dated November 5, 2021, stated you presented for bilateral elbow pain and upper extremity pain, with the main issue being lateral pain on the right elbow. You also reported numbness in the whole left hand. He noted the exam showed tenderness to palpation over the right lateral epicondyles with decreased sensation in the right median nerve. Your left elbow was noted to have tenderness over the medial epicondyles and cubital tunnel. You were diagnosed with right lateral epicondylitis, carpal tunnel on the right, cubital tunnel on the left, and medial epicondylitis on the left. The plan was to order an EMG. A physical therapy note dated November 18, 2021, indicated you still had pain in both hands, elbows, and persistent numbness/tingling. The diagnoses were right lateral epicondylitis, carpal tunnel syndrome on the right, cubital tunnel syndrome on the left and medial epicondylitis on the left.

Upon review of the available medical documentation, Dr. Gottwald stated that taking into consideration the entire clinical picture, from a physical medicine and rehabilitation perspective, the following restrictions/limitations were supported from November 30, 2021, and ongoing:

- No restrictions to sitting/standing/walking
- Pushing/pulling/lifting/carrying up to 25 pounds occasionally
- No restrictions to bending, stooping, kneeling
- No climbing
- No restrictions to reaching overhead
- Frequently handling/fingering

Dr. Gottwald noted that with the above restrictions/limitations, it would be expected that you could safely and consistently perform full-time work (8 hours per day, 5 days per week). In regard to the above restrictions, Dr. Gottwald noted that your issues were mainly with your arms and there were no documented issues with your neck, low back, or balance. He also noted that on video surveillance, you had no noted issues holding bags, pushing a garbage can, or bending.

Upon review of Dr. Gottwald's report, it was determined that your file would be referred for a vocational review to determine if there were occupations that you have skills to perform within your restrictions/limitations that would be considered gainful as defined by the plan. As outlined in the provisions above, after 2 years of disability benefits, your gainful wage is based upon 66 and 2/3 percent of your Indexed Predisability Earnings. Our Financial Consultant completed a calculation of your Indexed Predisability Earnings on January 19, 2022, and determined your Indexed Predisability Earnings to be $5,500.40 per month. Therefore, your gainful monthly wage based upon 66 and 2/3 percent of this amount is equal to $3,667.12, or $21.16 per hour.

In the interim, you emailed our office on January 18, 2022, noting that you still had not been able to review your medical files and were providing additional medical records that you thought may be missing. Although you were beyond the original deadline we had provided; we responded to you via email on January 19, 2022, and requested that you provide any additional medical records you wished to be considered in our review no later than January 26, 2022. You sent various emails with multiple attachments over the period of January 18, 2022, through January 27, 2022. The documentation you submitted is bulleted above in the Data Reviewed section of this letter. Within your emails, you reported that you were planned to have surgery on your right elbow with Dr. O'Connor on February 9, 2022.

In order to determine if the additional medical information provided by you would alter the restrictions/limitations previously identified by Dr. Gottwald in the Independent Medical Record Review Report completed on January 17, 2022, we referred all of the medical documentation to Dr. Gottwald for review and requested an addendum to the original report.

Much of the medical documentation you provided dated back to 2019, at which time your LTD claim had been approved and was being paid. The records documented you were seen by Vineet Singla, DO (Family Medicine) on February 28, 2019, for right wrist and elbow pain and were diagnosed with lateral epicondylitis and given a prescription for therapy. You treated in

11

physical therapy through July 2019 with no reported improvement. You were seen by Dr. Singla again April 1, 2019, and reported you were having issues on your left side as well and you were planned to continue physical therapy. Letters from Alex Behar, MD (Physical Medicine & Rehabilitation) and Dr. Singla in June 2019, recommended time off of work. Dr. Singla indicated you were off work since May 1, 2019, and you were planned to see a hand specialist for possible carpal tunnel syndrome surgery. A letter from Karen Kowalcyzk, APRN (Family Medicine) dated September 13, 2019, noted you were scheduled for wrist surgery on September 17, 2019, and would remain out of work for another 8 to 12 weeks. Another letter from Ms. Kowalcyzk dated January 15, 2020, indicated you were scheduled to have right carpal tunnel surgery on January 24, 2020, followed by post-operative occupational therapy to regain the full use/function of your right hand for at least 4 weeks post-op and could not return to work at that time.

Restrictions provided in an after visit summary dated March 9, 2020, by Raymond Janevicius, MD (Plastic & Reconstructive Surgery) recommended you remain out of work for 1 month and were given a prescription for therapy.

In an emergency room visit dated January 8, 2021, Elizabeth Baldys, PA-C noted you were seen for evaluation of your left arm pain. You reported you had this pain for approximately 1 year and were diagnosed with carpal tunnel with a plan to have a release in the near future. You reported the pain was worse since that morning. You had numbness and tingling in the extremity, which was normal. You denied any weakness and were neurovascularly intact.

A Progress note dated November 5, 2021, from Daryl O'Connor, MD (Orthopedic Surgeon) indicates you presented with complaints of bilateral elbow and upper extremity pain for more than a year. You had a right carpal tunnel release in January 2020. Your main complaint was lateral elbow pain on the right, which was reported to have been ongoing for about 3 years. You reported pain along the medial aspect of your left elbow with numbness involving the left hand; as well as numbness in the right hand related activities. Examination of the left elbow revealed point tenderness over the medial epicondyle, tenderness over the cubital tunnel, positive forced elbow flexion test, diminished pinprick and light touch sensation in the entire hand, mildly positive median nerve compression test, and mildly positive Phalen sign. Examination of the right elbow showed tenderness over the lateral epicondyle, pain in the lateral elbow with resisted wrist extension and index finger extension, no pain with pronation supination of forearm, no pain with resisted elbow extension or flexion, no pain with resisted pronation supination, diminished light touch and pinprick sensation in the median nerve distribution right hand, positive median nerve compression test and Phalen's sign, and negative forced elbow flexion testing. The plan was for the electrodiagnostic testing of both upper extremities to evaluate median and ulnar nerves.

A physical therapy note dated November 18, 2021, from Ashleigh Gonzalez, OT noted you reported a mild decrease in your symptoms since initiation of skilled therapy. You were responding well to nerve glides, desensitization techniques as well as placement of kinesio tape for inhibition taping, which was decreasing your pain. You continued to present with paresthesia bilaterally.

12

A progress note dated November 30, 2021, from Ms. Kowalczyk documents you presented to follow-up on your arm pain. You reported having numbness and tingling in both hands with decreased range of motion. You needed new orthotic therapy and a disability form filled out. A physical exam was notable for tenderness in both elbows, forearms and decreased range of motion of both wrists.

A procedure note dated December 17, 2021, from Dr. Behar documents you had an EMG done, which showed a mild-to-moderate carpal tunnel on the left. The right side was normal.

A physical therapy note dated January 17, 2022, from Ms. Gonzalez indicates the therapist recommended a home stimulator unit with a plan to continue therapy for 3 more visits and transition to a home exercise program.

A progress note dated January 19, 2022, from Dr. O'Connor indicates you noted some improvement from therapy, mostly from the left medial elbow pain. You were noted to have numbness and tingling in both hands and used a wrist splint on the right. You reported some success with taping on the left medial elbow. The majority of your pain was over the lateral elbow on the right. Prior injections to the right elbow did not help. Your current medications included Lidoderm, Tylenol 3, Lyrica, tramadol, and Lipitor. A physical exam was notable for tenderness on palpation over the right lateral elbow, negative Tinel's and Phalen's bilaterally, left elbow tenderness at the medial epicondyle. You were diagnosed with right lateral epicondylitis, left medial epicondylitis, and left carpal tunnel. You were noted to have had an EMG done in October 2021, which showed a left carpal tunnel syndrome. It was felt that your issues were mostly from epicondylitis. The plan was to trial therapy to include dry needling and consider a carpal tunnel release in the future. In terms of your right elbow, the plan was for epicondylar debridement and extensor tendon repair. A physical therapy prescription for dry needling was provided.

A progress note dated January 21, 2022, from Dr. Singla, indicated you were seen for your left elbow. You reported getting taping done at ATI. You reported having some tingling in your fourth and fifth digits of the left hand. A physical therapy order was made, as well as trial of Lidoderm patch.

An appointment note dated February 10, 2022, indicated that a follow up appointment was scheduled with Dr. O'Connor.

We received an Independent Medical Record Review Addendum report from Dr. Gottwald dated February 3, 2022. Per review of the additional medical information, Dr. Gottwald stated that the additional medical information did not alter the findings from his original report. He stated that restrictions and limitations as of November 30, 2021, remain unchanged. However, he stated there was a change in the length of time for the recommended restrictions. Dr. Gottwald noted that the most recent progress note from Dr. O'Connor indicated that you were pending surgery in early February 2022, and that the surgery would include a debridement of the right elbow. Therefore, Dr. Gottwald stated that the restrictions identified in his prior report would remain in place until you had the surgery. He further reported that once you had the surgery, you would be unable to work for approximately 3 months for post-operative healing and recovery.

13

As it was determined that you had residual functional capacity to perform full-time work with restrictions as of November 30, 2021 (the date your LTD benefits were terminated), your file was referred to our Vocational Specialist to complete an Employability Assessment. The restrictions and limitations considered were those as outlined above by Dr. Gottwald. Your gainful wage was determined to be $21.16 per hour as also outlined above. This review was completed by our Vocational Specialist on February 8, 2022.

The review noted that you are a high school graduate and had attained a Bachelor's degree in Agronomy & Related Sciences and completed a 1- year graduate program in Transportation. You had noted on your claim forms that you are computer literate and have experience with Microsoft Word, Windows, Excel, Power Point, and the internet and email. You noted excellent typing skills and that you are able to type 72 wpm.

It was noted that at the time you ceased working, you had been working as a Senior Air Exporter (Wholesaler II) for Nippon Express USA. Prior to this job, you worked as a Bilingual Logistics Coordinator for Life Fitness. You managed a staff of 6 people and utilized your bilingual skills. Prior to this, you worked as a Production Coordinator at Fuji Hunt Chemicals.

The Vocational Specialist completed a Transferable Skills Analysis (TSA) utilizing the restrictions and limitations as outlined above by Dr. Gottwald, which fell within a sedentary to light physical demand range. Based upon the results of the TSA, it was determined that you have transferable skills to perform the following occupations with the reported wages for the Chicago-Naperville-Elgin, IL area:

| DOT Code | Occupation | SVP | PDL | Match | Wages |
|---|---|---|---|---|---|
| *019.167-010 | Logistics Specialist | 8 | S | Close | $28.59 |
| 137.267-018 | Translator | 7 | S | Close | $21.50 |
| *185.157-018 | Wholesaler II | 7 | S | Close | $37.51 |
| 185.167-034 | Manager, Merchandise | 7 | S | Close | $58.95 |
| 189.167-014 | Director, Service | 7 | S | Close | $46.85 |
| 221.167-014 | Material Coordinator | 6 | L | Close | $24.79 |
| *221.167-018 | Production Coordinator | 6 | S | Close | $24.79 |
| 222.137-030 | Shipping & Receiving Supervisor | 6 | L | Close | $30.84 |
| 222.137-034 | Stock Supervisor | 6 | L | Close | $30.84 |
| 260.357-010 | Commission Agent, Agricultural | 6 | S | Close | $29.65 |
| 279.157-010 | Manufacturer's Representative | 6 | L | Close | $29.65 |
| 279.357-014 | Sales Rep, General Merchandise | 5 | L | Close | $29.65 |
| 221.367-070 | Service Clerk | 4 | S | Close | $23.42 |
| 222.367-070 | Expediter, Service Order | 3 | L | Close | $24.79 |
| 162.157-034 | Procurement Engineer | 7 | S | Good | $32.18 |
| 162.157-038 | Purchasing Agent | 7 | L | Good | $32.18 |
| 249.137-026 | Supervisor, Order Takers | 5 | S | Good | $30.84 |
| 273.357-014 | Sales Rep, Automotive Leasing | 5 | L | Good | $27.82 |
| 292.137-014 | Supvsr, Route Sales Delivery Drivers | 5 | L | Good | $28.52 |
| 162.157-034 | Procurement Engineer | 7 | S | Good | $32.18 |

14

Based upon the results of the TSA and the labor market information, it was the Vocational Specialist's professional opinion that you have transferable skills to perform several occupations which meet or exceed your gainful of $21.16 per hour, including your own occupation.

We note you provided additional information regarding your ongoing surgery plans in emails dated February 7, 2022, and February 8, 2022; as well as provided an update regarding your SSD claim status. You indicated your surgery was rescheduled for February 28, 2022, and you provided documentation confirming such; including your pre-operative appointment details and COVID testing. As the medical information pertained to an upcoming surgery, it would not alter the opinion of Dr. Gottwald, as the information already on file supported that you were planned to undergo surgery. You also provided a letter from Allsup dated February 1, 2022, confirming they were assisting you with your SSD application.

Based on review of the information as outlined above, we have determined that you had residual capacity to perform work within a sedentary to light physical demand range with restrictions for the period of November 30, 2021, until your surgery date (February 28, 2022). As also outlined above, there were occupations identified within your restrictions and limitations that you have skills to perform that would also be considered gainful. Therefore, from November 30, 2021, until the date of your surgery, you did not satisfy the definition of Disability and therefore are not eligible for ongoing LTD benefits. Additionally, although it was opined that you would be unable to perform any occupation for approximately 3 months after your surgery, your coverage under the LTD plan is no longer in effect. As outlined in the provisions above, your coverage under the plan would have ended when you ceased Active Work on May 1, 2019. Although we note you ceased work due to a sickness or injury, the plan indicates it would only provide a limited continuation of coverage of not more than 6 months. Additionally, although the plan offers continued payments for a Recurring Disability; as part of the requirements you must return to Active Work for less than 6 months to be eligible for continued payments under this provision. As you have not returned to Active Work with your former employer, you are not eligible for a Recurring Disability.

As required under ERISA, if the plan is to uphold an adverse claim decision, you and/or your representative are provided the opportunity to review and respond to the new information generated on appeal prior to a final decision being rendered. As such, on February 10, 2022, we emailed you a letter and all of the appeal documentation. We also sent this information via UPS. In our letter, we informed you that we were suspending our review until March 27, 2022, to allow you the opportunity to review and respond to the information generated on appeal. It was explained to you that we would resume our review of your appeal on March 27, 2022, or sooner upon receipt of a response/comments from you.

On March 1, 2022, we received an email from you noting a surgery date of February 28, 2022, and there were various attachment included. We responded to you via email on March 3, 2022, advising you that we were unable to view the attachments. We also reminded you to submit any additional information/comments in response to our February 10, 2022 letter and documentation that was sent to you.

15

We subsequently noted an error in the Employability Assessment report that was previously completed by our Vocational Specialist on February 8, 2022. As such, this report was corrected by our Vocational Specialist on March 18, 2022, and it was noted that the findings as outlined above remained unchanged. You were provided with a copy of the corrected report via email on March 18, 2022, and were reminded of the deadline to submit a response and/or additional information as indicated in our February 10, 2022. We received an email from you that same date indicating you would view the attachment at the library the following Monday.

We received an email from you on March 25, 2022, including various attachments as bulleted above in the Data Reviewed section of this letter. You did not include any information in the body of the email. The documentation provided confirms you underwent a right elbow lateral epicondylar debridement and extensor tendon repair with Dr. O'Connor on February 28, 2022. You were seen post-operative on March 9, 2022, and given restrictions of no heavy lifting, pushing, or pulling with a plan to begin physical therapy and follow up in 3 to 4 weeks. You have a follow-up appointment scheduled with Dr. O'Connor for April 13, 2022. You were also seen by Dr. Behar on March 15, 2022, for right great toe metacarpophalangeal joint pain. You were planned to undergo corticosteroid injections with Dr. Behar planned for April 12, 2022. Please note that this information does not alter our determination as outlined above, as previously stated our office and the independent reviewer were aware of your planned surgery.

## Conclusion

On appeal, we have reviewed your file and the additional information that you submitted and that was gathered independently during our assessment as outlined above. We have also considered the opinions of the independent reviewer as well as your providers.

As your LTD benefits became effective June 30, 2019; you must be considered disabled from any gainful occupation to remain eligible for benefits as of June 30, 2021.

Per review of the additional medical information received on appeal, we note that you have remained under regular care for your medical conditions. However, per review of the medical documentation and review of the video surveillance by an independent physician as outlined above, the information reviewed supports that you were capable of performing full-time sedentary to light work with restrictions as of November 30, 2021. As also outlined above, it has been determined that you have transferable skills to perform various occupations that fall within your restrictions and limitations (including your own), which are also considered gainful. As such, you no longer satisfied the definition of Disability under the any gainful occupation provision of the plan as of November 30, 2021.

We note you required ongoing treatment and as of January 19, 2022, were planned to undergo surgery on your right elbow. This surgery was performed by Dr. O'Connor on February 28, 2022. As outlined above, it was determined that your restrictions would remain unchanged while awaiting surgery. Therefore, for the period of November 30, 2021, through February 27, 2022, you did not satisfy the definition of Disability. Additionally, although we note it was opined that you would be expected to be unable to work in any capacity for approximately 3 months following your surgery; you were no longer covered under the LTD plan at that time and do not

16

meet the plan requirements for a Recurring Disability. As such, you are not eligible for any additional benefits under the plan and your claim remains closed.

In regard to your pursuit of SSD benefits, we note that you had provided documentation from the Social Security Administration dated October 18, 2021, with a request that you provide them with additional information by October 28, 2021. It is unclear if you had complied with this request. We note you reported your SSD claim remained open and you provided an email from Allsup dated November 24, 2021, confirming they received your authorization forms and would be assisting you with your application. We confirmed with Allsup on December 1, 2021, that they received your Authorization forms on November 24, 2021, which is after your LTD benefits were terminated. Therefore, it appears you were compliant with the pursuit of SSD benefits after LTD benefits had already ended. We note the most recent information pertaining to your SSD claim was dated February 1, 2022, which indicated your SSD claim remains pending.

Please note that we disagree that DMS was in violation of any federal/state laws in regard to the handling of your LTD claim as stated in your November 19, 2021 email. Your LTD claim was handled according to the LTD plan provisions and you were provided with appropriate rights to appeal the termination of your LTD benefits.

In summary, the information reviewed supports that you no longer satisfied the definition of Disability as of November 30, 2021, and are no longer covered under the plan for any new periods of disability thereafter. Therefore, based on review of the information outlined above, we are maintaining the decision to terminate your claim for LTD benefits effective November 30, 2021.

You have now exhausted your right to an administrative review under the claims' procedures for your employer's employee benefit plan. If your claim is subject to ERISA and you disagree with our decision on the claim, you have a right to bring a civil action under ERISA Section 502(a). The policy states the following regarding legal proceedings:

### Legal Action

*Legal action for a claim may not be started earlier than 60 days after proof of loss is filed. Further, no legal action may be started later than three years after proof is required to be filed.*

Based upon the above language, we note you were advised in the termination letter dated November 18, 2021 that you had failed to provide proof of disability as requested. Sixty days from that date would be January 17, 2021. Therefore, you have up until January 17, 2024 to file suit.

We will, upon specific request and free of charge, provide copies of all documents, records, and/or other information relevant to your claim for benefits.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Department of Insurance, it maintains

17

a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Should you have any questions in regards to this letter, please contact us at the toll-free number listed below Monday through Friday between the hours of 8:00 a.m. and 6:00 p.m. Eastern Standard Time.

Sincerely,

Nicole Bitzas
Senior Benefit Consultant

Telephone (844) 914-1788 ext. 1159
Fax (413) 747-1545

Enclosure (Foreign language Insert)

18

IC

RECEIVED

FEB 03 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT