

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

---

**GRACIELA DELA TORRE,**

Plaintiff,

v.

**NIPPON LIFE INSURANCE COMPANY OF AMERICA,**

**Defendant.**

**Case No.: 1:22-cv-07059**

**Honorable Rebecca R. Pallmeyer**

**FILED**

FEB 10 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**PLAINTIFF'S AMENDED MOTION TO COMPEL FULL SETTLEMENT DOCUMENTATION, ATTORNEY RETAINER AGREEMENTS, FINANCIAL DISCLOSURE, AND EMERGENCY RELIEF**

TO Honorable Rebecca R. Pallmeyer:

Plaintiff, **Graciela Dela Torre**, pro se, respectfully moves this Court for an order compelling Defendant **Nippon Life Insurance Company of America ("Nippon")**, as well as former Plaintiff's attorneys **Kevin Probst, Ankin Law Firm, and all other attorneys listed in Plaintiff's case,** to produce the complete and unredacted settlement documentation, financial records, attorney retainer agreements, and related communications regarding the settlement in this case. Plaintiff further requests **expedited relief** due to the urgency of her financial and medical situation and the pattern of misconduct by Disability Management Services (DMS) and Allsup in connection with her Social Security Disability Insurance (SSDI) claim.

**I. BACKGROUND**

1. **Due to Plaintiff's incapacity to work, as documented by her doctor since July 5, 2019,** transparency regarding the settlement funds and legal representation is critical to ensure Plaintiff's rights and financial stability are protected. Plaintiff has reason to believe that the **settlement agreement presented by attorneys Kevin Probst and Ankin Law Firm included provisions for a $90,000 immediate payment for past benefits** and an additional **$6 million designated for future benefits and medical expenses.**

2. Plaintiff has **never received a full and transparent breakdown of the settlement funds,** and key financial records have been withheld.

3. Defendant Nippon, along with Plaintiff's former attorneys, has failed to provide any documentation supporting this alleged $6 million settlement provision.

4. **DMS, acting as Nippon's agent, engaged in misconduct regarding Plaintiff's SSDI claim by using Allsup, a third-party service, to provide false information.** Plaintiff was misled regarding her appeal deadline, resulting in a wrongful denial of benefits.

5. **DMS and Allsup's actions caused direct harm to Plaintiff's financial and medical well-being, and the same entities were involved in processing her long-term disability claim.** This raises serious concerns that similar misconduct occurred in the handling of Plaintiff's settlement with Nippon.

6. **Attorney Kevin Probst has refused to communicate with Plaintiff unless ordered by the Court,** despite his fiduciary duty to provide transparency regarding settlement terms.

7. **Nippon's attorney, Justin Wax Jacobs, has refused to hand over surveillance videos and internal communications regarding Plaintiff's claim** and instead attempted to quash Plaintiff's subpoena, raising concerns of evidence suppression.

8. **A number of attorneys, including Ankin Law Firm, were added to Plaintiff's case without Plaintiff's knowledge or consent** and must provide proof of their retention and authority to act on Plaintiff's behalf.

9. **David Humbert, Chief Strategy & Operations Officer of Nippon Life Insurance Company of America,** was petitioned to be added as **Nippon's representative,** independent from Nippon's legal counsel, as he signed the settlement agreement and is legally accountable for its terms.

10. **On May 24, 2023, after Plaintiff's deposition, attorney Kevin Probst, who traveled from Florida to Illinois unnecessarily despite other local counsel (Ankin Law) being listed in Plaintiff's case, dismissed Plaintiff from the proceeding and proceeded to meet with opposing counsel without Plaintiff's presence.** This raises serious ethical concerns regarding ex parte communications and possible collusion against Plaintiff's interests.

11. **Plaintiff is experiencing immediate financial hardship.**

- On **January 22, 2025,** Plaintiff's **Discover card was declined** for a **$9.61** purchase at Subway due to insufficient funds, despite the alleged settlement funds being designated for her support.

- On **February 10, 2025,** Plaintiff's **BMO Bank account was overdrawn,** reinforcing the fact that she lacks access to settlement funds and remains in financial distress.

12. **Plaintiff is also being denied critical medical treatment.** On **January 2, 2025, Blue Cross Community Health Plans denied Plaintiff's MRI request for shoulder pain treatment,** citing a lack of completed provider-directed treatments. This denial further underscores Plaintiff's need for immediate relief, as her ongoing medical issues remain untreated due to financial constraints.

13. **Medical records from ATI Physical Therapy, dated May 16, 2022, confirm Plaintiff's ongoing pain and functional limitations.** The report states that:

- Plaintiff's **pain levels remained at 4-5/10** and increased to **8-10/10 during activity.**

- **Physical therapy was limited due to excessive pain** and lack of improvement.

- Plaintiff **could not meet functional goals** necessary for a return to work.

- **Weighted therapy was discontinued** to avoid worsening her condition.

- Plaintiff remains **medically restricted to sedentary work** and unable to lift heavy objects.

14. **On January 28, 2025, Nippon's attorney filed a demand for arbitration seeking:**

- **$90,000 plus attorney fees and punitive damages,** despite Plaintiff contesting the legitimacy of the settlement.

- **Requesting arbitration be held in New York,** an unreasonable and burdensome venue for Plaintiff, who resides in Illinois.

15. This arbitration filing is a **clear scare tactic** to intimidate Plaintiff and prevent her from pursuing justice.

16. Plaintiff is entitled to a **full forensic audit of the settlement funds and payment records** to determine where the money was allocated and who received payments.

## II. REQUEST FOR COURT ACTION

1. **Order immediate production of the full and unredacted settlement agreement** by February 11, 2025.

2. **Compel disclosure of all financial and settlement-related communications.**

3. **Mandate a forensic audit of all settlement funds.**

4. **Order a sworn statement from each attorney involved in the case.**

5. **Bar Nippon from proceeding with arbitration in New York.**

6. **Grant emergency relief due to Plaintiff's financial and medical hardship.**

7. **Require any objections to be filed by February 11, 2025.**

8. **Grant any other relief the Court deems necessary.**

## IV. CERTIFICATE OF SERVICE

I certify that on **Feb 10, 2025**, I electronically filed the foregoing **Plaintiff's Amended Motion to Compel Full Settlement Documentation, Attorney Retainer Agreements, Financial Disclosure, and Emergency Relief** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: February 10, 2025

Respectfully submitted,

**Graciela Dela Torre**
Pro Se Plaintiff
653 Wing St
Elgin, IL 60123
(630) 670-5914
GMESTIZA1@GMAIL.COM

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

Graciela Dela Torre
_____
*Plaintiff*

Nippon Life Insurance
Disability Managemet Serv Inc.
All affiliated Investigators or
third Party Surveillance Companies
_____
*Defendant*

)
)
)
)
)
)
)

1:22-cv-07059

Civil Action No.

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Nippon Life Insurance, Disability Mangement Inc & All affilia Investigators or third-Party Surveillance companies.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: 1. Identify of Private Investigators & Surveilance teams 2. Finantial records of sorveillance expenses 3. Reports from private Investigators & surveillace teams 4 Justification for surveillance & Decicion-Making Documents 5. - Legal communication regarding Surveillance

| Place: 219 S Dearborn St Chicago IL 60604 | Date and Time: Feb 8, 2025 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 2-3-2025 (Feb 3, 2025)

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

OR

_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ _____ , who issues or requests this subpoena, are:

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* Feb 3, 2025 .

☒ I served the subpoena by delivering a copy to the named person as follows: Recipients Notified
via the court's CM/ECF System.
DMS via Email & Certified Mail on *(date)* Feb 3, 2025 ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

Graciela Dela Torre Pro-Se
Printed name and title

653 Wing St, Elgin FL 60123
Server's address

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Case: 1:22-cv-07059 Document #: 73 Filed: 02/10/25 Page 8 of 24 PageID #:594

 **Gmail**

Gracie Dlt <gmestiza1@gmail.com>

## Your Discover Card was declined

1 message

**Discover Card** <discover@services.discover.com>
Reply-To: gmestiza1@gmail.com
To: gmestiza1@gmail.com

Wed, Jan 22, 2025 at 6:20 PM

🔒 Account Center — Last 4 #: 2449



## GRACIELA DELATORRE, your Discover® card was declined because you exceeded your credit line

Merchant: Subway 5128

Date: January 22, 2025

Amount: $9.61

Wasn't you? Call us immediately at 1-800-DISCOVER

**See Recent Activity**

**Update Your Alert Settings**

*This is a total disconnection from the rest of*

5.7    Time is of the essence with respect to this Agreement.    *the settlemet document*

5.8    This Agreement shall be construed and interpreted in accordance with

Illinois law.

IN WITNESS HEREOF. the undersigned have executed this Agreement as of the dates

indicated below:

GRACIELA DELA TORRE

BY:    *Graciela Dela Torre*
ITS:    *Plantiff*
DATE:    *12/29/2023*

NIPPON LIFE INSURANCE COMPANY OF AMERICA

*David Acselrod*    BY:    *David Acselrod*
ITS:    Chief Strategy & Operations Officer
DATE: January 2, 2024

*Note tha the settlement has been filed under Seal to avoid Defendant to accuse Plantiff of Violeting the confidenciality, as Defendant has file a law suit and call for Arbitration.*

*Page 7*

7

# About Us

Home (/) / About Us (/about-us/) / LeadershipTeam

## Leadership Team

**Katsuhisa (Katz) Kumasako - President and Chief Executive Officer**  ✚

 **David Acselrod - Executive Vice President & Chief Operating & Strategy Officer**  ▬



Executive Vice President & Chief Operating & Strategy Officer

▸ David joined Nippon Life Benefits in February 2023 as Executive Vice President and Chief Operating and Strategy Officer. David has 30+ years of experience as an insurance and finance services executive. Prior to

Skip to Content of ex$kipetcEoatan


### Blue Cross Community Health Plans℠

## Adverse Benefit Determination

**1/2/2025**

GRACIELA DELATORRE
653 WING ST
ELGIN, IL 60123

*For help to translate or understand this, please call 1-877-860-2837 or TDD/TTY hearing impaired 711.*

Re:  Member name: GRACIELA DELATORRE
Member ID No: 144059409
Tracking Number: D233355839

Dear  GRACIELA DELATORRE:

Blue Cross Community Health Plans, offered by Blue Cross and Blue Shield of Illinois, looked at services requested for GRACIELA DELATORRE. The request received on 01/02/2025 for the coverage of the services listed below was Denied.

| Procedure | Description | Units Requested | Units Denied | Modifier (if applicable) |
|---|---|---|---|---|
| 73221 | Magnetic Resonance Imaging (MRI), a special kind of picture of your arm joint (wrist, elbow or shoulder) without contrast (dye) | 1 | 1 | |

Your doctor told us that you have shoulder pain. An imaging study was asked for. We cannot approve this request because:

Imaging requires six weeks of provider directed treatment to be completed. Supported treatments include (but are not limited to) drugs for swelling or pain, an in office workout (physical therapy), and/or oral or injected steroids. This must have been completed in the past three months without improved symptoms. Contact (via office visit, phone, email, or messaging) must occur after the treatment is completed. This has not been met because:



| | |
|---|---|
| **Progress Note - 5/16/2022** | 841 S. Randall Road, Elgin, IL 60123<br>Phone: 224-856-4448<br>Fax: 847-608-0974<br>WC Claim #: 188961910 |

| | | |
|---|---|---|
| Name: **DeLaTorre, Graciela (24302290)**<br>DOB: **4/8/1978**   Age: **44**   Sex: **F**<br>Date of Injury:<br>Primary/Rehab Diagnosis: Epicondyle Debridement: Lateral (R)<br>                    Epicondylitis: Lateral (R)<br>ICD10 Codes: M25.521, M77.11, Z47.89 | Physician: OConnor MD, Daryl<br>Return Physician Appointment: 5/11/2022<br>Visit Count: 15 | Occupation: Air Export Agent<br>Off Work Date: 5/1/2019<br>Estimated Current PDL: Sedentary<br>Surgery Date: 2/28/2022<br>Adjuster: PORTER,FRAN |

**Assessment:**

Since last progress note, Graciela has made progress with end range elbow AROM, however limitations remain into end range elbow extension.

At this time, patient is struggling to meet initial established functional goals, or tolerate any progression of treatment due to pain. Pt presents today with report of active infection along proximal scar site, having been prescribed antibiotics, and as such withheld heat and IFC out of caution. Pt is also verbalizing increased cracking sensation along R ulnar wrist, that becomes painful with overt pronation. Negative Roo's and Adson's test.

Discontinued weighted elbow stretch activity after new orders were received from MD's office on 5/9/22. Treatment sessions have consisted of heat, soft tissue massage, P/AROM exercises and IFC to decrease symptoms on her R elbow. No increased pain is reported with PROM to elbow and forearm. At this time, pain has been consistently 3-4/10, increasing at times after treatment sessions.

Progression of therapy may be limited due to subjective complaints. If pt unable to progress, will then recommend follow up with MD for continued testing/imaging. MD please advise with frequency/duration.

| | **Evaluation Date: 3/30/2022** | **Progress Note Date: 4/21/2022** | **Progress Note Date: 5/16/2022** |
|---|---|---|---|
| **Primary Complaint:** | Patient reports stiffness in her R elbow. | Patient reports stiffness in her R elbow, intermittent cramping. | Patients complaint is consistent 4-5/10 pain, intermittent shooting pains for over a week that is impacting overall independence with ADLs. |
| **Functional Limitations:** | Brushing her teeth, Climbing ladders, Dressing, Lifting heavy products from the floor, Opening a jar, Opening boxes, Pushing/pulling a pallet jack, Typing for extended time, Use hand tools, Using the barcode scanner | Climbing ladders, Lifting heavy products from the floor, Opening a jar, Opening boxes, Pushing/pulling a pallet jack, Typing for extended time, Use hand tools, Using the barcode scanner | Applying makeup, Climbing ladders, Cutting food, Dressing: Donning/doffing undergarments, Holding a plate, bowl, glass, Holding steering wheel, Lifting from floor, Lifting heavy products from the floor, Lifting overhead, Opening a jar, Opening boxes, Overhead reaching, Styling/washing hair, Typing for extended time, Use hand tools, Using the barcode scanner |
| **Pain Scale:** | At Rest 4/10; During Activity 9/10; | At Rest 3/10; During Activity 5/10; | At Rest 5/10; During Activity 8/10; Functional Activity: Any lifting, any heavy activity; |
| **Observation:** | Observation Comment: Girth assessment 1 inch distal to the R elbow crease: 27cm Girth assessment 1 inch distal to the L elbow crease: 26.5cm Patient presents with an incision along the lateral aspect of her R elbow. The incision is healing well without any signs or symptoms of infection. | Observation Comment: Girth assessment 1 inch distal to the R elbow crease: 27cm Girth assessment 1 inch distal to the L elbow crease: 26.5cm Patient presents with an incision along the lateral aspect of her R elbow. The incision is healing well and responding well to scar remodleing techniques. | Observation Comment: Girth assessment 1 inch distal to the R elbow crease: 26cm Girth assessment 1 inch distal to the L elbow crease: 26.5cm Scar site along R lateral elbow presents with thickness. Pt is hypersensitive to area following draining to R lateral elbow, and recent infection. |

| ROM:(degrees) | | AROM | | PROM | | | AROM | | PROM | | | AROM | | PROM | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | R | L | R | L | | R | L | R | L | | R | L | R | L |
| | Elbow Flexion (140°-150°) | 95* | 143 | | | Elbow Flexion (140°-150°) | 142* | 143 | | | Elbow Flexion (140°-150°) | 142* | 143 | | |
| | Elbow Extension (0°-10°) | 51* | 0 | | | Elbow Extension (0°-10°) | -20* | 0 | -13 | | Elbow Extension (0°-10°) | -15* | 0 | -10 | |
| | Forearm Supination (85°-90°) | 85* | 87 | | | Forearm Supination (85°-90°) | 85* | 87 | | | Forearm Supination (85°-90°) | 85* | 87 | | |
| | Forearm Pronation (85°-90°) | 68* | 90 | | | Forearm Pronation (85°-90°) | 88* | 90 | | | Forearm Pronation (85°-90°) | 88* | 90 | | |
| | Wrist Flexion (80°-90°) | 40* | 66 | | | Wrist Flexion (80°-90°) | 72* | 66 | | | Wrist Flexion (80°-90°) | 72* | 66 | | |
| | Wrist Extension (70°-90°) | 46* | 65 | | | Wrist Extension (70°-90°) | 69* | 65 | | | Wrist Extension (70°-90°) | 69* | 65 | | |

| **Strength:** | Strength Comment: Strength not assessed on this date due to recent surgery. To be assessed when appropriate. | Strength Comment: Strength not assessed on this date due to recent surgery. To be assessed when appropriate. | Strength Comment: Strength not assessed on this date as updated MD orders say to hold weights at this time, will assess when MD clarifies orders and allows for strengthening. |
|---|---|---|---|

**Flexibility:**

**Name:** DeLaTorre, Graciela (2430229) — Prog 970059 5/16/2022 DOB 4/8/1972 Fax 847 602 0104 Page 1 of 2
**WC Claim #:** 188961910

|  | | |
|---|---|---|
| | describing more as a surgical pain vs constant stinging pain. | dorsal thumb IP joint only at rest. Pt has negative ROO's test today. She is reporting cracking sensation along R ulnar wrist with overt pronation, and occasionally with supination. Pain is reported with the crack, but then it dissipates. |
| **Special Tests:** | | **Other - ADSON'S TEST:** Right -; ROO's test also negative today. |
| **Neuro:** | **Sensation:** Sensory Comment: Patient notes continued numbness in the radial aspect of her R thumb. However, this has been present since prior to her carpal tunnel release surgery. | **Sensation:** Sensory Comment: Patient notes continued numbness in the radial aspect of her R thumb. However, this has been present since prior to her carpal tunnel release surgery. |

**Sensation:** Sensory Comment: Patient notes continued numbness in the radial aspect of her R thumb. However, this has been present since prior to her carpal tunnel release surgery.

**Outcome Assessments:**

| Date | Assessment | Score | Date | Assessment | Score | Date | Assessment | Score |
|---|---|---|---|---|---|---|---|---|
| 3/31/2022 | Upper Extremity Functional Index (UEFI) | 2pts | 4/21/2022 | Upper Extremity Functional Index (UEFI) | 17pts | 5/12/2022 | Upper Extremity Functional Index (UEFI) | 14pts |
| 3/31/2022 | VR-12 Mental Component Summary | 43pts | 4/21/2022 | VR-12 Mental Component Summary | 43pts | 5/12/2022 | VR-12 Mental Component Summary | 43pts |
| 3/31/2022 | VR-12 Physical Component Summary | 16pts | 4/21/2022 | VR-12 Physical Component Summary | 23pts | 5/12/2022 | VR-12 Physical Component Summary | 28pts |

## Plan of Treatment: Physician please advise

*Treatments: 97110 Therapeutic exercises , 97140 Manual therapy , 97112 Neuromuscular re-education , 97530 Therapeutic activities , 97165-97167 OT Evaluation , 97010 Cold pack , 97010 Hot pack , 97035 Ultrasound , 97014 Electrical stimulation (Unattended)*
*These treatments will address the objective and functional deficits as defined above*
The patient will be advanced safely and appropriately in order for the patient to progress towards his / her prior level of function. Additional exercises will be introduced, with progression to a comprehensive home exercise program upon discharge, to ensure carry over of functional gains achieved in the clinic. This treatment plan has been reviewed and agreed upon by the patient.

**Short Term Goals to be completed by: 3 weeks**

1. Patient will decrease pain score to 4/10
2. Patient will increase AROM to 20 degrees of R elbow extension — ✓ 05/16/2022
3. Patient will increase AROM to 120 degrees of R elbow flexion — ✓ 04/21/2022
4. Patient will improve UEFI outcome survey by 9 points.

**Long Term Goals to be completed by: 05/11/2022**

1. Patient will increase AROM to 140 degrees of R elbow flexion in order to allow for completion of: Using the barcode scanner — ✓ 05/16/2022
2. Patient will increase AROM to 90 degrees of pronation in order to allow for completion of: Opening boxes
3. Patient will increase strength to 5/5 in her wrist extensors in order to allow for completion of: Lifting heavy products from the floor
4. Patient will demonstrate grip strength within 10 % of uninvolved to allow for completion of: Climbing ladders
5. Patient will be able to squat and lift 70 lbs. for return to work duties.

**Electronically Signed By:** Ashleigh Gonzalez, OT, License 056011998 May 16, 2022 5:06 PM

### To Be Completed by Physician

☐ I have no revisions to this plan of care.

☐ Discharge patient.

☐ Revise plan of care as follows:

| Physician: OConnor MD, Daryl | Physician Signature: | Date: |
|---|---|---|



**AMERICAN ARBITRATION ASSOCIATION®** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# COMMERCIAL ARBITRATION RULES
# DEMAND FOR ARBITRATION

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☐. There is no additional administrative fee for this service.

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

Name of Respondent: Graciela Dela Torre

Address: 653 Wing Street

City: Elgin | State: **Illinois** ▼ | Zip Code: 60123

Phone No.: 630-670-5914 | Fax No.:

Email Address: gmestiza1@gmail.com

Name of Representative (if known):

Name of Firm (if applicable):

Representative's Address:

City: | State: **Select...** | Zip Code:

Phone No.: | Fax No.:

Email Address:

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

The Respondent violated a settlement agreement between the two parties by reopening a lawsuit which they had previously dismissed with prejudice and violated the settlement agreement's confidentiality clause by publishing information related to the agreement.

Dollar Amount of Claim: $ 90,000

Other Relief Sought: ☑ Attorneys Fees  ☐ Interest  ☐ Arbitration Costs  ☑ Punitive/Exemplary
☐ Other:

Amount enclosed: $ $1,925

In accordance with Fee Schedule: ☐ Flexible Fee Schedule  ☑ Standard Fee Schedule

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

Juris Doctorate admitted to practice law in any Court located in the state of Illinois, with a familiarity with Illinois state law.

Hearing locale: New York, New York

(check one) ☑ Requested by Claimant  ☐ Locale provision included in the contract



AMERICAN ARBITRATION ASSOCIATION*  |  INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION*

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| | | |
|---|---|---|
| Estimated time needed for hearings overall: | hours or 1 | days |

Type of Business:

Claimant: Insurance          Respondent: Private Individual

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?

Yes, Nippon is an American corporation whose parent company is a Japanese corporation.

Signature (may be signed by a representative)          Date:
*(signature)*                                          January 28, 2025

Name of Claimant: Nippon Life Insurance Company of America

Address (to be used in connection with this case): 666 Third Avenue, Suite 2201

| City: New York | State: New York ▼ | Zip Code: 10017 |
|---|---|---|

| Phone No.: 646-630-4923 | Fax No.: 212-867-3057 |
|---|---|

Email Address: J-WaxJacobs@nipponlifebenefits.com

Name of Representative: Justin Wax Jacobs

Name of Firm (if applicable):

Representative's Address: 666 Third Avenue, Suite 2201

| City: New York | State: New York ▼ | Zip Code: 10017 |
|---|---|---|

| Phone No.: 646-630-4923 | Fax No.: 212-867-3057 |
|---|---|

Email Address: J-WaxJacobs@nipponlifebenefits.com

To begin proceedings, **please file online at www.adr.org/fileonline**. You will need to upload a copy of this Demand and the Arbitration Agreement, and pay the appropriate fee.

# Social Security Administration
# **Retirement, Survivors and Disability Insurance**
Important Information

SOCIAL SECURITY
SUITE 100
790 FLETCHER DR
ELGIN, IL 60123-4736
Date: February 03, 2025
BNC#: 25D1712H42854
T2

GRACIELA DE LA TORRE
653 WING ST
ELGIN, IL 60123-2852

Dear GRACIELA DE LA TORRE

On August 9, 2022, we sent you a letter about our decision on your claim for Social Security disability benefits. We told you that if you did not agree with the decision, you could request an appeal within 60 days from the date you received that letter. Our records show that you did not request an appeal until December 23, 2024. *(Allsup was bypassed, Graciela sent a letter directly to the SSA Office*

We can extend the time limit to file an appeal only if you had a good reason for missing the deadline. However, based on the facts that you gave us, we are unable to extend the time limit in your case. Therefore, we cannot review your claim for benefits.

**Suspect Social Security Fraud?**

If you suspect Social Security Fraud, please visit https://oig.ssa.gov/report or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

**Need more help?**

1. Visit www.ssa.gov for fast, simple, and secure online service.

2. Call us at 1-800-772-1213, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY 1-800-325-0778. Please mention this letter when you call.

3. You may also call your local office at 877-405-0435.

SOCIAL SECURITY
SUITE 100
790 FLETCHER DR
ELGIN, IL 60123-4736

How are we doing? Go to www.ssa.gov/feedback to tell us.

*Social Security Administration*


Life Reclaimed

May 22, 2023

GRACIELA DELA TORRE
653 WING ST
ELGIN IL  60123

Dear Ms. Dela Torre:

As requested, this letter confirms that Allsup is assisting you with your Social Security Disability Insurance (SSDI) claim. Your claim is currently pending; no decision has been made at this time.  Please continue to keep us updated with any changes to your condition or medication.

Please contact us via email at YourAllsupTeam@allsup.com or call us at (800) 405-8339 if you need any additional information.

Sincerely,


Allsup

Case: 1:22-cv-07059 Document #: 73 Filed: 02/10/25 Page 20 of 24 PageID #:606

 Gmail

Gracie Dlt <gmestiza1@gmail.com>

## Re: Graciela Delatorre, 653 Wing St, Elgin IL 60123

1 message

**Your Allsup Team** <YourAllsupTeam@allsup.com>
To: "gmestiza1@gmail.com" <gmestiza1@gmail.com>

 Wed, Jan 15, 2025 at 7:34 AM

Graciela

Your email and attachment has been received and will be reviewed by the appropriate team member.

Your Allsup Team

Phn (800)405-8339

Fax (618)641-4705

YourAllsupTeam@allsup.com



NOTICE: This e-mail
message and all attachments transmitted with it may contain legally privileged
and confidential information intended solely for the use of the
addressee. If the reader of this message is not the intended recipient,
you are hereby notified that any reading, dissemination, distribution, copying,
or other use of this message or its attachments is strictly prohibited.
If you have received this message in error, please notify the sender
immediately by telephone (800-405-8339) or via email (yourallsupteam@allsup.com)
and delete this message and all copies and backups thereof. Thank you.

**To:** Yourallsupteam@allsup.com
**From:** gmestiza1@gmail.com
**Sent:** Jan 14, 2025 at 02:58 PM CST
**Subject:** Graciela Delatorre, 653 Wing St, Elgin IL 60123

 Please send this file to be scanned to my SS Claim (Supportive medical records to follow)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

---

**GRACIELA DELA TORRE,** Plaintiff,

v.                                              **Case No.: 1:22-cv-07059**

**NIPPON LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL FULL SETTLEMENT DOCUMENTATION, ATTORNEY RETAINER AGREEMENTS, FINANCIAL DISCLOSURE, AND EMERGENCY RELIEF**

Upon consideration of **Plaintiff Graciela Dela Torre's Motion to Compel Full Settlement Documentation, Attorney Retainer Agreements, Financial Disclosure, and Emergency Relief**, and for good cause shown, IT IS HEREBY ORDERED THAT:

## I. PRODUCTION OF SETTLEMENT DOCUMENTATION AND COMMUNICATIONS

1. Defendant **Nippon Life Insurance Company of America ("Nippon")**, along with **Kevin Probst and Ankin Law Firm**, shall produce a **full and unredacted copy of the settlement agreement** executed in this matter, including all referenced financial terms and payments.

2. All communications, email exchanges, and records of negotiations **between Nippon, Kevin Probst, and Ankin Law Firm** regarding the settlement shall be disclosed to Plaintiff **by February 11, 2025, before the scheduled hearing on February 13, 2025.**

## II. ATTORNEY RETAINER AGREEMENTS AND REPRESENTATION DISCLOSURE

3. The following attorneys must submit a **sworn affidavit and provide full documentation** of their legal representation of Plaintiff, including any signed retainer agreements and records of payments received in connection with this case:

   o **Kevin E. Probst** – kprobst@longtermdisability.net

   o **Justin R. Lewicky (Ankin Law)** – jlewicky@ankinlaw.com

   o **Kamil Wojtowicz (Ankin Law)** – kwojtowicz@ankinlaw.com

   o **Santos Mazariegos (Ankin Law)** – smazariegos@ankinlaw.com

   o **Edward P. Taric Dabdoub (Dabdoub Law)** – eddie@longtermdisability.net

- o **Ambria Dominise Mahomes (Faegre Drinker Biddle & Reath LLP)** – ambria.mahomes@faegredrinker.com

- o **Matthew M. Morrissey (Faegre Drinker Biddle & Reath LLP)** – matthew.morrissey@faegredrinker.com

- o **Justin Wax Jacobs (Nippon Life Insurance)** – j-waxjacobs@nipponlifebenefits.com

- o **David ~~Humbert~~ Acselrod (Nippon Life Insurance Chief Strategy & Operations Officer)** – [to be provided by Nippon's counsel]

4. If any attorney **fails to produce valid documentation of their retention or representation**, they shall be **removed as counsel of record** and may be subject to **further disciplinary action.**

## III. FORENSIC AUDIT OF SETTLEMENT FUNDS

5. A forensic audit shall be conducted on all **settlement-related financial transactions** to determine the distribution of:

- o The **$90,000 payment** for past benefits.

- o The **$6 million** allegedly designated for future benefits and medical expenses.

- o Any **third-party disbursements, attorney fees, or undisclosed financial transactions.**

6. Defendant **Nippon, Kevin Probst, and Ankin Law Firm** shall provide **all relevant bank statements, wire transfers, and disbursement records** related to the settlement.

## IV. COURT HEARING ON FINANCIAL MISCONDUCT

7. A hearing is set for **February 13, 2025,** at which time:

- o The parties shall **present evidence regarding the allocation of settlement funds.**

- o Any identified financial misconduct, legal malpractice, or misrepresentation will be addressed by the Court.

- o The Court may impose **sanctions or refer matters to the Illinois State Bar Association for disciplinary review.**

## V. RESPONSE TO ANY OBJECTIONS

8. Any objections raised in response to this Order must be **filed immediately and no later than February 11, 2025,** to ensure all records are available for review prior to the February 13, 2025 hearing.

9. Failure to provide valid objections within this timeframe will result in **automatic enforcement of this Order** and may result in additional sanctions for non-compliance.

## VI. ARBITRATION OBJECTIONS AND RESTRAINING ORDER

10. The Court finds that Defendant **Nippon Life Insurance Company of America** improperly initiated arbitration proceedings (Case No. 01-25-0000-4189) without providing proper notice or adherence to contractual requirements.

11. Defendant is **hereby enjoined** from proceeding with arbitration in **New York or any other forum,** as it is an **unreasonable and unjustified venue given that Plaintiff resides in Illinois and the case has been litigated in the Northern District of Illinois.**

12. Defendant must immediately withdraw its demand for arbitration regarding the **$90,000 payment, attorney fees, and punitive/exemplary damages,** as this constitutes **a clear scare tactic** to intimidate the Plaintiff.

## VII. ADDITIONAL ORDERS

13. **If any party fails to comply with this Order,** the Court **reserves the right to impose sanctions, including attorney fee reimbursements, contempt proceedings, or further judicial remedies.**

14. **Given Plaintiff's urgent financial and medical situation, compliance with this Order is deemed a matter of immediate necessity.**

15. This Court retains jurisdiction over this matter to ensure compliance with the terms of this Order and to issue further relief as necessary.

IT IS SO ORDERED.

Dated: _____

_____

UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF ILLINOIS

Case: 1:22-cv-07059 Document #: 73 Filed: 02/10/25 Page 24 of 24 PageID #:610

 Gmail

**Gracie Dlt <gmestiza1@gmail.com>**

# Your account was overdrawn
1 message

**BMO Digital Banking** <no-reply@usdigitalalerts.bmo.com>
To: GMESTIZA1@gmail.com

Mon, Feb 10, 2025 at 6:46 AM



Your account was overdrawn



Hi GRACIELA,

We wanted to let you know that there weren't enough funds available for a recent transaction and your account was overdrawn. Don't worry though, we've got you covered, and we paid for the item(s) at this time.



Sign-in to BMO Digital Banking to manage your account online.

Best Regards,

Your friends at BMO

AlertID: BDB065

Contact us | Locations