\U

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

**GRACIELA DELA TORRE,**
Plaintiff,          **Case No.: 1:22-cv-07059**

v.                **Honorable Rebecca R. Pallmeyer**

**NIPPON LIFE INSURANCE COMPANY OF AMERICA,** Defendant.

**FILED**

*UV* FEB 12 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER**

NOW COMES Plaintiff, **Graciela Dela Torre,** pro se, and respectfully moves this Honorable Court for an **Emergency Protective Order** pursuant to **Rule 26(c) of the Federal Rules of Civil Procedure** and any applicable federal or state anti-harassment laws. In support thereof, Plaintiff states as follows:

## I. INTRODUCTION

1. Plaintiff is requesting an **Emergency Protective Order** against **Nippon Life Insurance Company of America, Disability Management Services (DMS) its successors, and their agents, including private investigators hired to surveil and harass Plaintiff.**

2. Plaintiff has been subjected to **continuous and targeted surveillance,** including the presence of a **private investigator parked next to Plaintiff outside her medical provider's office on February 6, 2025.**

3. This surveillance has caused **significant emotional distress** and poses an ongoing **threat to Plaintiff's safety, privacy, and well-being.**

## II. FACTUAL BACKGROUND

4. Plaintiff has been under surveillance by Defendant's hired investigators since at least **December 2021,** as documented in the **DMS Surveillance Report.**

5. The DMS Surveillance Report (Dated December 8, 2021) explicitly states:

   o *"On December 2, 2021, Plaintiff was observed exiting her residence and was documented using both hands to hang and adjust lawn ornaments around her house."*

- o *"On December 3, 2021, Plaintiff was again documented adjusting lawn ornaments."*

6. Plaintiff recently encountered **one of the same private investigators from 2021, now surveilling her in February 2025.** The investigator was parked near Plaintiff's vehicle while she was obtaining medical records from her doctor.

7. Plaintiff has obtained **photographic evidence** of this individual and will submit it as part of the record.

## III. ONGOING HARASSMENT & INTIMIDATION

8. Defendant's agents have engaged in **a coordinated campaign of harassment, intimidation, and invasion of privacy,** including:

   - o **Ongoing surveillance outside Plaintiff's residence** (confirmed in Defendant's own reports and exhibits).

   - o **Presence of a private investigator outside Plaintiff's medical facility** on February 6, 2025.

   - o **Previous surveillance recordings of Plaintiff engaging in personal holiday decorations in 2021**, showing a **pattern of excessive monitoring.**

9. This continued surveillance **exceeds the bounds of lawful investigation** and is an abuse of process designed to **intimidate, harass, and mentally distress Plaintiff.**

10. The **proximity of private investigators to Plaintiff's home and medical locations** poses an immediate risk to Plaintiff's safety and well-being.

## IV. LEGAL BASIS FOR RELIEF

11. Under **Rule 26(c) of the Federal Rules of Civil Procedure,** a court may issue a protective order to **prevent annoyance, embarrassment, oppression, or undue burden.**

12. Plaintiff has demonstrated an **ongoing and escalating pattern of harassment** by Defendant's agents.

13. Courts have recognized that **excessive surveillance, particularly targeting an individual's home and medical visits, constitutes harassment and warrants injunctive relief.**

## V. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **GRANT an Emergency Protective Order** prohibiting Defendant, its agents, private investigators, or any third-party contractors from conducting further surveillance on Plaintiff.

2. **ORDER Defendant to immediately disclose the identities of all private investigators and agencies hired to surveil Plaintiff.**

3. **ENJOIN Defendant and its agents from approaching, contacting, or photographing Plaintiff within 500 feet of her residence, workplace, or medical facilities.**

4. **REQUIRE Defendant to produce all surveillance records, reports, and expenditures related to Plaintiff.**

5. **AWARD any further relief that this Court deems necessary and just.**

## VI. CERTIFICATE OF SERVICE

I hereby certify that on **February 12, 2025**, a true and correct copy of the foregoing **Emergency Motion for Protective Order** was served upon all parties of record via the CM/ECF system and other necessary means.

Respectfully submitted,

**Graciela Dela Torre**
Pro Se Plaintiff
653 Wing St, Elgin, IL 60123
(630) 670-5914
GMESTIZA1@GMAIL.COM

Exhibit 1



*Exhibit 2*

Medical Records Summary          *Graciela DeLaTorre*

*DoB 4/8/78*

## Permanent and Non-Reversible Disabilities

The following medical conditions are chronic, degenerative, and non-reversible, permanently impairing my ability to work in any capacity. These diagnoses, validated by medical professionals, confirm that my condition will not improve over time and will only worsen. My physical and cognitive impairments make it impossible to sustain gainful employment.

Additionally, a comprehensive medical evaluation confirming that since on July 05, 2019, confirms that I am incapacitated for any and all work.

### 1. Right Wrist

- **Surgery (01/24/2020):** Right endoscopic carpal tunnel release and extensor tendon repair.

- **X-ray (03/09/2023):** Right wrist pain, right wrist tendonitis.

- **Ultrasound (03/21/2023):** Mild ulnar subluxation of the extensor carpi ulnaris (ECU) tendon at the distal ulna without discrete subsheath deficit; mild insufficiency cannot be ruled out. Small ganglion cyst tethered to the volar capsule at the distal radius.

**Complications:** Chronic wrist pain, tendonitis, mild insufficiency, ganglion cyst.
**Work Impact:** Limited grip strength, pain with repetitive motions, and restricted dexterity make it impossible to perform tasks requiring fine motor skills, lifting, or prolonged use of the right hand.

### 2. Right Elbow

- **Surgery (02/28/2022):** Lateral epicondylar debridement and extensor tendon repair.

- **X-ray (08/18/2022):** Mineralization at the lateral epicondyle, likely sequela of remote epicondylitis.

- **MRI (06/22/2023):** Postoperative changes from debridement, thickening of the right common extensor tendon, small cleft of fluid undercutting tendon-bone interface.

**Request Submitted By:**

**Graciela Delatorre**
gmestiza1@gmail.com
(630) 670-5914
653 Wing St, Elgin, IL 60123

*2/6/25 Dr SINGLA*
*I agree w/ these diagnosis and testing done and how it impacts her ability to work.*

Exhibit 3



I Gracela Dela Torre recognized the
Private investigator shown in Exhibit 1
as the same Private investigator that took
this picture of me in front of my house

*Exhibit 4*

- o  After Visit Summary and progress note from Daryl O'Connor, MD (Orthopedic Surgery) dated November 5, 2021
- Email from you dated November 19, 2021, requesting to appeal the termination of your LTD benefits
- Medical records requested by our office from Edward-Elmhurst Clinic covering the period of May 14, 2021, through June 29, 2021
- Email addressed to you from Allsup dated November 24, 2021
- ATI Physical Therapy schedule covering the period of October 20, 2021, through December 29, 2021.
- Email correspondence between our office and Allsup on December 1, 2021
- ATI Physical Therapy progress note dated November 18, 2021
- Letter dated December 18, 2021, pertaining to your Social Security Disability (SSD) claim.
- Surveillance Report dated December 8, 2021, and corresponding video completed by Covent Bridge Group documenting activity overserved over the period December 1, 2021, through December 3, 2021
- Independent Medical Record Review report completed by Erich Gottwald, DO (Board Certified in Physical Medicine & Rehabilitation) on January 17, 2022
- Indexed Predisability Earnings calculation worksheet completed by our Financial Consultant on January 19, 2022
- Emails from you over the period of January 18, 2022, through January 27, 2022, with various attachments including:
  - o  Email from you to your Human Resources department dated May 7, 2019
  - o  Medical records from Edward-Elmhurst Clinic covering the period of February 28, 2019, through September 13, 2019.
  - o  Letters from Vineet Singla, MD (Family Medicine) dated April 1, 2019, and June 24, 2019
  - o  Letters from Karen Kowalczyk, APRN (Family Medicine) dated May 1, 2019, and January 15, 2020
  - o  Letters from Alex Behar, MD (Physical Medicine & Rehabilitation) dated June 18, 2019, and December 19, 2019
  - o  ATI Physical Therapy progress notes covering the period of March 18, 2019, through July 10, 2019, and progress notes dated November 18, 2021 (duplicate), and January 17, 2022
  - o  After visit summaries from Dr. Behar dated July 18, 2019, and December 17, 2021; including nerve conduction study and electromyography procedure notes dated December 17, 2021
  - o  After visit summary from Raymond Janevicius MD (Plastic & Reconstructive Surgery) dated January 24, 2020
  - o  Work Status Reports completed by Dr. Janevicius dated February 13, 2020, and March 9, 2020.

4

*Page 4 of DMS termination letter*

*LTD Claim# 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*