

**BC**

**FILED**

**LJ**

**3/15/2026**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GRACIELA DELA TORRE, | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Case No. 1:22-cv-07059 |
| | ) & |
| NIPPON LIFE INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| Defendant. | ) |
| _____ | ) |

**AND CONSOLIDATED WITH**

| | |
|---|---|
| GRACIELA DELA TORRE, | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Case No. 1:25-cv-01483 |
| | ) |
| NIPPON LIFE INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| Defendant. | ) |
| _____ | ) |

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE UNDER RULE 201 AND TO CORRECT THE RECORD**

NOTICE OF LIMITED ASSISTANCE

I, Graciela Dela Torre, am a disabled person proceeding pro se. I am currently experiencing a fibromyalgia flare-up and associated cognitive difficulties. I received limited, non-legal organizational assistance to format this document. The contents were read aloud to me. I understand, approve, and adopt this filing as my own.

**PRELIMINARY STATEMENT**

On March 4, 2026, this Court entered a Minute Entry (Dkt. 204) in Case No. 1:25-cv-01483. In that entry, the Court explicitly referenced documents from Case No. 1:22-cv-07059, including Docket No. 34 and Docket No. 94. The Court further referenced a hearing and findings made in the earlier proceeding.

By this action, this Court has already recognized that these cases are related and that their records may be considered together. Plaintiff therefore respectfully submits this motion for consideration in both Case No. 1:22-cv-07059 and Case No. 1:25-cv-01483, as the conduct at issue, including the violation of this Court's sealing order (Dkt. 58), the submission of altered evidence, and the pattern of bad-faith litigation, spans both proceedings.

**I. RELIEF REQUESTED**

Plaintiff Graciela Dela Torre respectfully requests that this Court:

1. Take judicial notice under Federal Rule of Evidence 201 of the existence and content of the documents listed in Section III, which are part of this Court's permanent record and whose accuracy cannot reasonably be questioned.

2. Correct and complete the record to reflect the facts established by these documents, which are essential to understanding the full scope of Defendants' conduct and Plaintiff's circumstances.

3. Consider that the settlement agreement is voidable due to Plaintiff's lack of mental capacity at the time of signing.

4. Consider that Defendants' counsel, Justin Wax Jacobs, committed fraud on the court under Rule 60(d)(3) by obtaining a sealing order and then violating it.

5. Consider that Defendants' conduct constitutes bad faith, abuse of process, and a pattern of harassment warranting corrective action.
6. Consider that NLIcoA, as a stock company, had a direct financial incentive to wrongfully terminate Plaintiff's benefits, and acted on that incentive.

Plaintiff does not seek monetary relief from this filing. Plaintiff seeks only accuracy and completeness of the record, and to place before the Court the full truth of what occurred.

## II. LEGAL AUTHORITY FOR THIS COURT TO ACT

This Court has multiple grounds to entertain Plaintiff's request, despite the case being closed:

- Federal Rule of Civil Procedure 60(b)(2)-(3) permits relief from a final judgment based on newly discovered evidence and fraud. Plaintiff's medical records documenting her cognitive impairment at the time of settlement constitute newly discovered evidence. Defendants' counsel committed fraud by obtaining a sealing order and then violating it.
- Federal Rule of Civil Procedure 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." *Klapprott v. United States*, 335 U.S. 601 (1949). The Fourth Circuit has held that mental illness severe enough to prevent a party from understanding or complying with proceedings constitutes an "extraordinary circumstance" warranting relief under this rule. *Justus v. Clarke*, 78 F.4th 97 (4th Cir. 2023).
- Federal Rule of Civil Procedure 60(d)(3) expressly preserves the court's power to "set aside a judgment for fraud on the court" without time limit. Defendants' counsel committed fraud on the court by obtaining an order sealing Docket Numbers 37, 45, and 46, and then violating that order by using the sealed information in a separate, public lawsuit.
- Inherent Power to Correct the Record. The Supreme Court has long recognized "the inherent power which exists in a court to amend its records, and correct mistakes and supply defects and omissions therein." *Gagnon v. United States*, 193 U.S. 451, 458 (1904). Courts have exercised this power to correct records after decades.
- Rule 60(a) permits correction of clerical errors or omissions at any time.
- Illinois Law – Mental Incapacity. Under Illinois law, a contract is voidable if a party lacked the mental capacity to understand its nature and consequences. *Mead v. Stegall*, 77 Ill. App. 679 (1898), establishes that contracts of persons lacking capacity are voidable, not void, and the question of competency may be raised only by the party himself. *Rittenhouse v. Tabor*, 2019 IL App (3d) 170802, 24 (contract voidable where party lacks capacity to comprehend nature and effect of agreement).
- Federal Rule of Evidence 201. Under Rule 201, the Court may take judicial notice of facts not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The Court must take judicial notice if a party requests it and provides the necessary information. The Court may take judicial notice at any stage of the proceeding.
- *The Supreme Court's Decision in Waetzig v. Halliburton Energy Services, Inc. *, No. 23–971 (Feb. 26, 2025), confirms that a voluntarily dismissed case qualifies as a "final proceeding" under Rule 60(b), and its records remain properly before the court for purposes of judicial notice and consideration of related matters.

## III. DOCUMENTS REQUESTED FOR JUDICIAL NOTICE

The following documents are already in this Court's record. Plaintiff requests judicial notice of their existence and content:

From Case No. 1:22-cv-07059

- Dkt. 9-1, ¶14 — Sworn declaration of Justin Wax Jacobs: "Nippon is an insurance company incorporated in the State of Iowa." This establishes NLIcoA's domestic status and directly contradicts the "international" representation later made to the ICDR.
- Dkt. 9-2 — Insurance policy identifying Nippon Life Insurance Company of America as "A Stock Company - Des Moines, Iowa." This establishes NLIcoA's for-profit stock company structure, creating an inherent conflict of interest.
- Dkt. 9-3 — Claim Coversheet showing Benefit Term Date: April 8, 2043. This establishes the value of benefits Plaintiff signed away exceeded $1.5 million.
- Dkt. 9-5 — Notice of Termination of Benefits, dated November 18, 2021. This establishes the date of termination and, when combined with Dkt. 9-2 and 9-3, shows that NLIcoA released reserves allocated for Plaintiff's benefits, converting them to profit.
- Dkt. 9-6 — Email chain between Plaintiff and DMS, November 18-19, 2021. This shows Plaintiff immediately disputed the termination of her benefits.
- Dkt. 37 — Plaintiff's Motion to Reopen (filed under seal). This document, sealed at Defendants' request, contains Plaintiff's analysis of "gaslighting" and detailed medical history.
- Dkt. 45, 46 — Defendants' motions to seal (filed under seal). These documents, filed by Defendants' counsel, sought to seal Plaintiff's evidence.
- Dkt. 58 — Order granting Defendants' motion to seal Docket Numbers 37, 45, and 46, signed by the Honorable Rebecca R. Pallmeyer on February 6, 2025. This order confirms that Defendants' counsel obtained sealing of documents containing sensitive information, including allegations of "gaslighting" and Plaintiff's medical history.
- Dkt. 61-1, ¶14 — Reaffirmed sworn declaration of Justin Wax Jacobs, corroborating NLIcoA's domestic status.
- Dkt. 72 — Plaintiff's medical records (filed under seal). These documents document Plaintiff's disability and cognitive impairment.
- Dkt. 79 — Deposition transcript (May 24, 2023). Plaintiff's testimony describes working 21-hour days in excruciating pain and the worsening of her condition.
- Dkt. 94 — Order granting Plaintiff's motion to file medical records under seal. This confirms that Plaintiff's medical information was properly protected.

From Related Case No. 1:25-cv-01483

- Dkt. 44-3 — Unredacted Settlement Agreement, publicly filed by Defendants' counsel. This demonstrates Defendants' own violation of confidentiality.
- Dkt. 58 — Order sealing Docket Numbers 37, 45, and 46, signed February 6, 2025. This confirms JAWJ's own request to seal documents containing sensitive information.
- Dkt. 139 — NLIcoA's $10 million counterclaim against Plaintiff, filed August 1, 2025. This establishes the retaliatory nature of Defendants' litigation conduct.
- Dkt. 142 — NLIcoA's motion to join OpenAI, filed August 4, 2025. This demonstrates Defendants' attempt to shift focus and blame to a third party.
- Dkt. 173 — U.S. Marshals Process Receipt and Return, filed August 26, 2025. The special instructions state: "Pictures of the Party to be served are enclosed." This establishes that Defendants' counsel provided photographs of Plaintiff to law enforcement.
- Dkt. 191-5 — Exhibit containing email correspondence regarding ICDR assignment. This document was later disavowed by the American Arbitration Association, which confirmed in writing that it "did not come from" them.
- Dkt. 196-1 — Affidavit of Special Process Server, filed January 13, 2026, documenting a second instance of personal service with detailed physical description of Plaintiff.

From Related Case No. 1:26-cv-02448

- Dkt. 1 – Nippon Life Insurance Company of America's complaint against OpenAI, filed March 4, 2026. This public document contains references to Plaintiff's sealed medical information, directly violating this Court's sealing order.

## IV. FACTS ESTABLISHED BY THESE DOCUMENTS

The following facts are not subject to reasonable dispute:

### A. NLIcoA is a For-Profit Stock Company With an Inherent Conflict of Interest

- The insurance policy itself (Dkt. 9-2) identifies Nippon Life Insurance Company of America as "A Stock Company - Des Moines, Iowa."
- As a stock company, NLIcoA is owned by shareholders and exists to generate profit.
- This structure creates an inherent conflict of interest: the company profits directly from claim denials.
- Upon approving Plaintiff's benefits (June 2019), NLIcoA established statutory reserves for payments through April 8, 2043 (Dkt. 9-3).
- Upon terminating Plaintiff's benefits (November 18, 2021), NLIcoA released these reserves, converting them to profit (Dkt. 9-5).
- This profit flowed directly to NLIcoA's shareholders.
- This constitutes self-dealing with plan assets under ERISA §§ 404 and 406.

### B. Defendants' Counsel, Justin Wax Jacobs, Engaged in a Pattern of Bad Faith Conduct

- Defendants' counsel sought and obtained an order sealing Docket Numbers 37, 45, and 46 (Dkt. 58). These documents contained Plaintiff's analysis of "gaslighting" and her detailed medical history.
- Defendants' counsel then violated this sealing order. In a separate, public lawsuit against OpenAI (Case No. 1:26-cv-02448), Defendants' counsel used and referenced the sealed information, causing global publication of Plaintiff's private medical data.
- This conduct constitutes fraud on the court under Rule 60(d)(3). The Supreme Court has defined fraud on the court as conduct that "defiles the court itself" or is "a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases."
- Defendants' counsel submitted forged or altered evidence. Exhibit 191-5 in Case No. 1:25-cv-01483, submitted by Defendants' counsel, was later disavowed by the American Arbitration Association, which confirmed in writing that the document "did not come from" them.
- Defendants' counsel provided photographs of Plaintiff to U.S. Marshals (Dkt. 173). The special instructions state: "Pictures of the Party to be served are enclosed." This was entirely unnecessary, as Plaintiff was already receiving electronic service.
- Defendants' counsel disclosed that Plaintiff lives with her son and her granddaughter, a minor child, in instructions to U.S. Marshals, violating the family's privacy.
- Defendants' counsel arranged for a private process server to serve Plaintiff personally (Dkt. 196-1) despite electronic service already functioning, and provided the server with detailed physical descriptions.
- Defendants' counsel demanded a $50,000 lien on Plaintiff's home, her private OpenAI credentials, and a sworn confession during court-ordered settlement negotiations, constituting coercion, not good-faith negotiation.
- Defendants' counsel filed a retaliatory $10 million counterclaim (Dkt. 139) against a disabled, zero-income pro se litigant whom he knew to be disabled.
- Defendants' counsel filed a motion to join OpenAI (Dkt. 142) as a party, shifting focus from Plaintiff's claims to a "deep pocket" defendant.

- Defendants' counsel's public X (Twitter) profile identifies him as an expert in the Law of Armed Conflict (LOAC) , explaining his approach to litigation as warfare rather than advocacy.

## C. Plaintiff Was Severely Disabled and Cognitively Impaired

- Plaintiff has been disabled since 2019, as documented in her sealed medical records (Dkt. 72).
- Plaintiff's deposition testimony (Dkt. 79) describes working 21-hour days in excruciating pain:
  - *"I was working extremely long hours as usual. I was always in pain, always had to shake my hands. I left for lunch one day, and I went straight to my doctor because I couldn't take the pain anymore."* (at 48:12-16)
  - *"It got to the point that I was typing and tears were coming out of my eyes without me even crying because the pain was so intense."* (at 48:18-20)
  - *"I showed my doctor that my personal record working hours in one day was 21 hours, going home, trying to sleep two, three hours, going back again for another 18."* (at 54:16-19)
  - *"It got worse. It's not getting better."* (at 33:5-6)
- Plaintiff has undergone four surgeries related to her disabling conditions.
- Plaintiff's medical records, filed under seal (Dkt. 72), document cognitive impairment during the period of December 2023–January 2024, when she signed the settlement agreement.
- The Illinois Department of Human Services, in medical evaluations, has found Plaintiff incapacitated and documented cognitive decline.

## D. The Settlement Agreement is Voidable

- Under Illinois law, a contract signed without mental capacity is voidable.
- Plaintiff was cognitively impaired during December 2023–January 2024, as documented in sealed medical records (Dkt. 72).
- The consideration ($90,000) was grossly inadequate compared to the value of benefits signed away (over $1.5 million through April 8, 2043, as shown in Dkt. 9-3).
- Defendants had signed medical releases and received Plaintiff's sealed medical records. They knew, or should have known, of her impairment.
- Defendants continued to rely on the agreement despite this knowledge, constituting bad faith and violating the implied covenant of good faith and fair dealing. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 523 (1996).

## E. The Sealing Order Was Violated, Causing Global Harm

- Defendants' counsel obtained an order sealing Docket Numbers 37, 45, and 46 (Dkt. 58).
- These sealed documents contained Plaintiff's analysis of "gaslighting" and her detailed medical history.
- Defendants' counsel then violated this sealing order by using and referencing this information in a separate, public lawsuit against OpenAI (Case No. 1:26-cv-02448).
- This violation caused Plaintiff's sealed medical information to be published globally, reaching audiences across five continents.
- Stanford Law School published an article discussing Plaintiff's cognitive status, directly referencing the information Defendants' counsel had been ordered to keep sealed.
- News outlets in Japan (NHK, Kyodo News, Jiji Press), Korea (Yonhap News, Seoul Economic Daily), the United States (Bloomberg Law, New York Post), and Türkiye have all reported on the case, repeatedly referencing Plaintiff's sealed medical information.

- The global publication of Plaintiff's private medical information has caused irreparable harm to her reputation, privacy, and emotional well-being.
- Plaintiff never consented to this disclosure. She invoked the Court's protection precisely to prevent this harm.

---

## V. THIS FILING IS NECESSARY TO PREVENT INJUSTICE

Plaintiff cannot remain silent. The record currently does not reflect:

- That NLIcoA is a stock company with a direct financial incentive to deny claims.
- That NLIcoA profited from wrongfully terminating Plaintiff's benefits.
- That Plaintiff was cognitively impaired when she signed the settlement agreement.
- That Defendants knew of her impairment and proceeded anyway.
- That Defendants' counsel obtained a sealing order and then violated it.
- That Defendants' counsel submitted forged evidence.
- That Defendants' counsel used law enforcement to intimidate Plaintiff.
- That Defendants' counsel disclosed Plaintiff's family composition, including a minor child, to law enforcement.
- That Defendants' counsel's conduct constitutes fraud on the court.
- That the sealing order was violated, causing global publication of Plaintiff's private information.

If Plaintiff stays silent, an injustice will be done. The record will remain incomplete, and Defendants' misconduct will go uncorrected.

## VI. NO PREJUDICE TO DEFENDANT

This request causes no prejudice to Defendant. All documents are already in the Court's record. Defendant has had notice and access to them throughout these proceedings. Plaintiff seeks only accuracy and completeness of the record, not monetary relief from this filing.

## VII. REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Take judicial notice under Rule 201 of the documents listed in Section III.
2. Correct and complete the record to reflect the facts established by these documents.
3. Consider that the settlement agreement is voidable due to Plaintiff's lack of mental capacity at the time of signing.
4. Consider that Defendants' counsel, Justin Wax Jacobs, committed fraud on the court under Rule 60(d)(3).
5. Consider that NLIcoA, as a stock company, had a direct financial incentive to wrongfully terminate Plaintiff's benefits and acted on that incentive.
6. Consider that Defendants' conduct constitutes bad faith, abuse of process, and a pattern of harassment warranting corrective action.
7. Order such other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, a true and correct copy of the foregoing Plaintiff's Request for Judicial Notice Under Rule 201 and to Correct the Record was filed electronically via pro se box system, which will send notification of such filing to all counsel of record.

/s/ Graciela Dela Torre

Graciela Dela Torre, Pro Se

Elgin, IL 60123

(630) 670-5914

redacted1@gmail.com

Dated: March 15, 2026