

**BC**

**FILED**
5/3/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PJJ

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

------------------------------------ X

GRACIELA DELA TORRE,         :

        Plaintiff,   :

                :

      v.          :      Case: 1:22-cv-07059

                :

NIPPON LIFE INSURANCE COMPANY OF  :
AMERICA,

        Defendant.  :

------------------------------------ X

**PLAITIFF'S MOTION TO UNSEAL DOCKET  37 UNDER LOCAL RULE 26.2 COMPLIANCE**

**(DKT 58 APPROVED DKT 37 TO BE SEALED)**

Plaintiff, Dela Torre, receiving limited assistance, respectfully moves for an order unsealing Docket 37, or in the alternative, replace with Exhibit A, permitting narrowly tailored redactions consistent with Local Rule 26.2, and states asfollows:

**I. LOCAL RULE 26.2 COMPLIANCE STATEMENT**

Under **Local Rule 26.2(b)**, any party seeking to file or maintain documents under seal must demonstrate:

1. The specific portions of the document that warrant sealing;
2. The legitimate interest in confidentiality;
3. The injury that would result from disclosure; and
4. Why no less restrictive alternative (including redaction) is sufficient.

To Plaintiff's knowledge, the record does not contain a particularized Local Rule 26.2(b) finding supporting continued restriction of Docket Entry 37 at the document-specific level.

Further, to the extent any sealing or restricted access exists, it has not been accompanied by publicly articulated, document-specific findings as required by the Rule.

**II. REQUESTED RELIEF SATISFIES LOCAL RULE 26.2(a) AND (c)**

Plaintiff's request is fully consistent with Local Rule 26.2 because:

**A. Narrow Tailoring Requirement**

Plaintiff does not seek blanket disclosure of unrelated confidential material. Instead, Plaintiff proposes:

- Full unsealing where no protected interest exists; and
- Limited redactions only where strictly necessary.

This satisfies the Rule's preference for **partial sealing over wholesale restriction.**

**B. Redaction as the Preferred Alternative**

Local Rule 26.2 expressly contemplates redaction as a less restrictive alternative to sealing.
Plaintiff has submitted:

- **Exhibit A: Proposed Redacted Docket Entry 37**

This exhibit demonstrate that any potentially sensitive content can be isolated and removed without impairing public access to judicial reasoning or procedural history.

**C. Burden Under Rule 26.2 Rests on Continued Sealing Justification**

Once challenged, the burden remains on maintaining secrecy to show that:

- The material is not already part of the public record;
- Disclosure would cause specific, articulable harm; and

- Redaction is insufficient.

Absent such findings, continued restriction is inconsistent with Rule 26.2 and Seventh Circuit precedent.

## III. SEVENTH CIRCUIT STANDARD (INTEGRATED WITH LOCAL RULE 26.2)

The Seventh Circuit requires:

- Document-specific analysis (*Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943)
- Narrow tailoring (*Baxter Int'l v. Abbott Labs.*, 297 F.3d 544)
- Public access presumptions for judicial records (*In re Krynicki*, 983 F.2d 74)

Local Rule 26.2 operationalizes these requirements in this District by requiring **specificity and rejection of blanket sealing practices**.

## IV. APPLICATION TO DOCKET 37

Docket Entry 37 is a judicial record associated with post-settlement proceedings.

Because they reflect filings submitted for judicial consideration, they are subject to the strongest presumption of public access.

To the extent any portion is restricted, continued limitation must satisfy Local Rule 26.2(b) with:

- Identification of exact redacted portions;
- Explanation of harm; and
- Justification for rejecting redaction.

No such showing appears on the public docket.

## V. PUBLIC ACCESS INTEREST

The public has a strong interest in access to judicial records reflecting post-settlement proceedings.

This interest is heightened where filings relate to procedural fairness, enforcement, or post-settlement relief, as transparency ensures accountability in judicial decision-making.

## VI. REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Order Docket Entry 37 unsealed in full; or alternatively

2. Authorize narrowly tailored redactions consistent with Exhibit A;
4. Direct the Clerk to apply Local Rule 26.2 procedures if any continued restriction is deemed necessary; and
5. Grant such further relief as the Court deems just and proper.

## VII. CONCLUSION

Because Local Rule 26.2 requires specific, narrow, and justified restrictions, and because less restrictive alternatives exist, continued sealing or restriction is not supported on the present record.

Unsealing or narrowly tailored redaction is therefore appropriate. (Exhibit A)

**CERTIFICATE OF SERVICE**

I certify that on the date below, I filed the foregoing Motion to Unseal using the Court's CM/ECF system, which will automatically serve all counsel of record.

The official guidance of the Northern District of Illinois states that filings must comply with rule 5.2 and identifies the only redactions as:
Social security numbers, Full Birth dates, Minor's Names, Financial account numbers.
Settlement Amounts are not mentioned.

# UNITED STATES DISTRICT COURT

## FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1'

### Eastern Division

Graciela Dela Torre        Plaintiff,        <span style="color:red">**EXHIBIT A**</span>

v.                                                        Case No.: 1:22–cv–07059

Honorable Rebecca R. Pallmeyer

Nippon Life Insurance Company of America

Defendant.

## MOTION TO REOPEN CASE PURSUANT TO RULE 60(b)

COMES NOW, Plaintiff Graciela Dela Torre, proceeding pro se, and respectfully moves this Honorable Court to reopen the above-captioned case pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. In support of this motion, Plaintiff states as follows:

### INTRODUCTION

This motion seeks to reopen the case dismissed with prejudice on January 24, 2024, under Rule 60(b) due to fraud, misrepresentation, and misconduct by Plaintiff's legal representation during the settlement process. Plaintiff was pressured into signing a settlement agreement under coercive circumstances, deprived of informed consent, and only received a copy of the agreement over a year after signing.

### STATEMENT OF FACTS

1. On December 19, 2023, Plaintiff's attorney, Kevin Probst, instructed Plaintiff to sign and return page 7 of a settlement agreement, which consisted of a blank signature page. Plaintiff was not provided with the full agreement for review at the time of signing.

2. On December 29, 2023, Plaintiff received an email from the attorney's paralegal, Oriana Ordaz, emphasizing the urgency of signing and returning the blank signature page without offering a meaningful opportunity for questions or clarification.

3. Plaintiff was routinely contacted by the attorney and staff late on Friday afternoons, knowing Plaintiff was occupied caring for her granddaughter, creating undue pressure to comply without thorough review.

4. Plaintiff did not receive a full copy of the settlement agreement until January 13, 2025, over a year after the case was dismissed and long past the date of the signing.

UNITED STATES DISTRICT COURT

FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1

Eastern Division

5. Plaintiff has identified terms in the settlement agreement that she does not agree with and was not aware of at the time of signing due to the deceptive practices of her legal representation.

**LEGAL ARGUMENT**

Pursuant to Rule 60(b), a court may relieve a party from a final judgment or order for reasons including, but not limited to:

1. **Fraud, Misrepresentation, or Misconduct (Rule 60(b)(3)):**

   o Plaintiff's legal counsel engaged in coercive tactics, pressured Plaintiff into signing a blank signature page, and failed to provide the full settlement agreement until over a year later.

   o These actions deprived Plaintiff of the ability to make an informed decision and constituted a breach of fiduciary duty.

2. **Newly Discovered Evidence (Rule 60(b)(2)):**

   o The delayed provision of the settlement agreement revealed terms Plaintiff was not aware of at the time of signing. This constitutes new evidence that could not have been discovered with reasonable diligence within the original timeframe.

3. **Timeliness (Rule 60(c)):**

   o This motion is filed within the one-year deadline prescribed by Rule 60(c), as the case was dismissed on January 24, 2024.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. Grant this motion to reopen the case pursuant to Rule 60(b).

2. Allow Plaintiff to renegotiate the settlement agreement or proceed with litigation as necessary.

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

UNITED STATES DISTRICT COURT

FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1

Eastern Division

Graciela Dela Torre Plaintiff, Pro Se _____ 1/22/2025

653 Wing ST

Elgin IL 60123

(630) 670-5914 GMESTIZA1@GMAIL.COM

Date: January 22, 2025

Here's a comprehensive and organized list of my conditions, treatments, imaging findings, and complications by body part: ( Back up docs to follow )

**Right Wrist**
  - Surgery on January 24, 2020: Right endoscopic carpal tunnel release.
  - Ultrasound on March 21, 2023 revealed: Mild ulnar subluxation of the extensor carpi ulnaris (ECU) tendon at the distal ulna without discrete subsheath deficit; mild insufficiency cannot be ruled out. Small ganglion cyst tethered to the volar capsule at the distal radius.
- **Complications:**
  - Persistent pain and dysfunction, ongoing instability, and limited range of motion.

**Right Elbow**
  -Surgery on February 28, 2022: Lateral epicondylar debridement and extensor tendon repair.
  -X-ray on August 18, 2022 revealed: Mineralization at the lateral epicondyle, likely sequela of remote epicondylitis.
  -MRI on November 10, 2022 revealed: Tendinosis of the common extensor tendon with partial-thickness tearing (lateral epicondylitis).
- **Complications:**
-Persistent pain, weakness,and limited functionality due to tendinosis and incomplete healing.

**Left Wrist**
  -Surgery on September 29, 2022 : Left carpal tunnel release.
- **Complications:**
-Residual pain and difficulty with gripping and lifting.

**Left Elbow**
  -Ultrasound on November 29, 2022 revealed: Mild asymmetrical increase in the ulnar nerve caliber posterior to the medial epicondyle with subluxation.
-Surgery on February 9, 2023: Ulnar nerve transposition.
- **Complications:**
-Continued nerve dysfunction, pain, and weakness.

**Cervical Spine**
-MRI on May 29, 2022 revealed: -Scattered disc disease and osteoarthritis without significant central canal or neural foraminal narrowing.
  - Signal changes in the clivus, most compatible with fibrous dysplasia (confirmation suggested via noncontrast CT).
Left C7-T1 perineural cyst.
-X-ray on July 13, 2022 revealed: -Mild multilevel degenerative changes in the cervical spine.

Attention: Printed on both sides
Page = 1 of 2

- **Complications:**
-Forever lasting chronic neck pain and stiffness, attributed to surgical wound infection from prior right elbow surgery (Surgery done on February 28, 2022).

**Lower Back (Lumbar Spine)**
- MRI on July 8, 2022 revealed: Mild spondylotic changes at L5-S1 resulting in bilateral neural foraminal narrowing.
- **Complications:**
  - Persistent lower back pain and mobility issues.

**Right Toe**
-X-ray on March 15, 2022 revealed: Mild osteoarthritis in the first metatarsophalangeal joint.
- **Complications:**
  - Pain and stiffness in the toe affecting mobility.

**Brain**
-MRI on July 13, 2022 revealed: Scattered T2/FLAIR signal hyperintense foci in the superficial and deep cerebral white matter, likely sequelae of prior inflammation or infection.
- **Complications:**
-    Chronic headaches and cognitive difficulties. Note that patients with cognitive difficulties might develop dementia in the long term if the amount of stress is not well balanced.

**Hepatic and Gastrointestinal System**
  - CT Scan on June 11, 2023 revealed: Hepatic steatosis and a small hiatal hernia with imaging findings suggesting gastroesophageal reflux or dysmotility.
- **Complications:**
  - Digestive issues and discomfort due to reflux or dysmotility.

**Immune Function**
-Lab on June 03, 2023 Testing revealed:
  - Expanded ENA Antibody Screen, IGG :** value: 0.20; normal: <0.7 ug/L).
- **Complications:**
  - Chronic inflammation and systemic issues without clear autoimmune markers. (most compatible with fibrous dysplasia, see MRI of the Cervical Spine done on May 29, 2022)

This format provides a clear and concise summary of my conditions, treatments, and complications.

Page = 2 of 2

 Gmail

Gracie Dlt <gmestiza1@gmail.com>

## RE: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

1 message

**Kevin Probst** <kprobst@longtermdisability.net>                                  Tue, Jan 7, 2025 at 2:04 PM
To: Gracie Dlt <gmestiza1@gmail.com>

Good afternoon, Graciela:

After all the time, effort and resources that I and the firm dedicated to your case, reading your email was quite the shock. As you may recall, there was a strong possibility that - even if we had taken your case to judgment and won, you would have walked away with $0 because of the potential offsets/overpayment resulting from the money you were expecting to receive from Workers Comp and/or Social Security. Despite this fact, I was successful in getting Nippon to agree to pay $90,000 to resolve your case – and this was after you had already advised me that you'd willing to accept an offer of $80,000.

With disability cases such as yours, the only issue is whether the claim administrator made the correct decision at the time benefits were denied. In your case, that date was November 18, 2021. Your doctor's letter, on the other hand, was signed on December 7, 2023 – two years after Nippon terminated your benefits. Not surprisingly, Nippon was not interested in documents from 2 years after their decision was made.

As stated in the executed Settlement Agreement and Mutual Specific Release (attached) – and as is the case whenever parties sign a settlement agreement, they are releasing each other from any further causes of action related to the dispute and the court case is dismissed with prejudice (meaning it cannot be reopened).

It is my sincere hope that upon further reflection and consideration of the above explanation and facts, you come to understand again that we helped you obtain a **very** generous settlement offer.

I wish you a happy and healthy new year.



**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*                              longtermdisability.net

305.754.2000

*Fax*

305.754.2007

# DABDOUB LAW FIRM
## *Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Friday, January 3, 2025 5:00 PM
**To:** Kevin Probst <kprobst@longtermdisability.net>
**Cc:** Retire Paralegal <Paralegal@longtermdisability.net>
**Subject:** Re: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

**Graciela Dela Torre**
653 Wing St, Elgin IL 60123
January 3, 2025

**Kevin Probst**

Dabboub Law Firm
1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**Subject:** Request for Review of LTD Settlement and Potential Reopening

Dear Kevin,

I hope this message finds you well. I am writing to request your assistance in reviewing the settlement agreement for my Long-Term Disability (LTD) claim, as I have concerns about potential errors or omissions that may have impacted the outcome.

Specifically, I provided you with a letter from my doctor stating my incapacity to work, which I believe was a critical piece of evidence. However, I suspect that this letter may not have been included or considered during the settlement process. If this is the case, it would constitute a significant omission, potentially affecting the terms and fairness of the agreement.

To clarify and address this matter, I kindly ask you to:

1. **Review the Settlement Agreement:** Verify whether the doctor's letter and other pertinent medical evidence were included and appropriately considered.

2. **Provide Documentation:** Share any records or communications regarding the inclusion of the letter in the settlement process.

3. **Evaluate Options for Reopening the Claim:** If the letter was excluded, I would like to explore options to challenge or reopen the settlement based on error or omission.

I am also open to any additional recommendations you may have to address this issue. Please let me know if further documentation or clarification from my side is required.

Thank you for your attention to this matter. I look forward to your response and guidance. Please feel free to contact me at 653 Wing St, Elgin IL 60123

Sincerely,
Graciela Dela Torre

(630) 670-5914

*Do not print this email unless is necessary*

On Thu, Dec 21, 2023 at 6:00 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

Hi, Graciela:

The attached word doc reflects the tracked changes.

If you have any questions and prefer to speak by phone, let me know a few good times that work for you tomorrow.

Otherwise, as soon as you return your signature page, I'll sign as well and relay to Nippon's attorney which will start the 30 day clock for them to issue your check.

Regards,

Kevin



**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*

305.754.2000                longtermdisability.net

*Fax*                        f 𝕏 ▶ in G+

305.754.2007

# DABDOUB LAW FIRM
*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Thursday, December 21, 2023 6:45 PM
**To:** Kevin Probst <kprobst@longtermdisability.net>
**Subject:** Re: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

Email received, what are those changes?

On Thu, Dec 21, 2023, 2:32 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

Good afternoon, Gracie:



Since Nippon's attorney and I needed to make a few minor edits to the release, please sign and **(only)** return page 7 of the attached updated version.

Kindly confirm receipt of this email and let us know if you have any questions.

Regards,

Kevin

**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*

305.754.2000

longtermdisability.net

*Fax*

305.754.2007

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**From:** Kevin Probst
**Sent:** Tuesday, December 19, 2023 11:42 AM
**To:** Gracie Dlt <gmestiza1@gmail.com>
**Cc:** Paralegal <Paralegal@longtermdisability.net>
**Subject:** Settlement Release: Dela Torre v. Nippon Life

Hi, Graciela:

Please review the attached settlement agreement & release. You only need to send back page 7 after completing as follows:

BY: (Sign your name here)

ITS: (Write "Plaintiff")

DATE: (self-explanatory)

Let us know if you have any questions before signing.

Regards,

Kevin

**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

Office                    longtermdisability.net

305.754.2000

Fax

305.754.2007

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

5.7     Time is of the essence with respect to this Agreement.

5.8     This Agreement shall be construed and interpreted in accordance with Illinois law.

IN WITNESS HEREOF, the undersigned have executed this Agreement as of the dates indicated below:

GRACIELA DELA TORRE

BY:     _____
ITS:    _____
DATE:_____

NIPPON LIFE INSURANCE COMPANY OF AMERICA

BY:     _____
ITS:    _____
DATE:_____

7

*Kevin Probst*

**Clear Indicators of Gaslighting in the Communication:**

1. **Emotional Framing ("Quite the Shock"):**
   The phrase "reading your email was quite the shock" immediately sets a tone of surprise, making your concerns seem exaggerated, unreasonable, or unexpected. This subtle framing may cause you to question whether it was right to bring up the issue at all, manipulating your perception of the situation.

2. **Deflecting Accountability:**
   By emphasizing the "time, effort, and resources" invested by the firm, the email shifts the focus from your legitimate concerns to their perceived sacrifice. This tactic pressures you into feeling guilty for questioning their work and deflects attention away from the substance of your complaint, making you doubt whether your concerns matter.

3. **Minimizing Your Position:**
   The suggestion that you "would be willing to accept an offer of $80,000" implies that the settlement you received ($90,000) should be seen as more than fair, positioning you as ungrateful or unreasonable for questioning it. This minimizes your current position and subtly undermines the validity of your dissatisfaction.

4. **Dismissing New Evidence:**
   The statement, "Not surprisingly, Nippon was not interested in documents from 2 years after their decision was made," dismisses the relevance of your updated medical evidence without engaging with its actual importance. This tactic invalidates your new information, making you feel as though your efforts to provide relevant evidence are pointless.

5. **Polite Dismissal Masquerading as Resolution:**
   The phrase "It is my sincere hope… you come to understand again that we helped you obtain a very generous settlement offer" presents the situation as if your dissatisfaction is the result of misunderstanding or a lack of awareness. This subtly implies that you're wrong or overreacting, which makes you question your feelings or perspective.

6. **Finality Without Empathy:**
   The final statement, "wishing you a happy and healthy new year," may come off as a superficial gesture of concern, but its underlying tone shuts down any further discussion. This conveys the idea that the matter is closed, leaving no room for further dialogue or understanding, while giving the appearance of empathy without genuine resolution.

*The official guidance of the Northern District of Illinois states that filings must comply with rule 5.2 and identifies the only redactions as:
Social security numbers, Full Birth dates, Minor's Names, Financial account numbers.
Settlement Amounts are not mentioned.