BC

**FILED**

AXM

6/5/2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GRACIELA DELA TORRE,                    )
Plaintiff,                              )
                                        )
v.                                      ) Case No. 1:22-cv-07059
                                        ) Honorable Rebecca R. Pallmeyer
                                        )
NIPPON LIFE INSURANCE COMPANY  )
OF AMERICA,                             )
Defendant.                              )

**PLAINTIFF'S VERIFIED DECLARATION AND RECORD RECONCILIATION IN RESPONSE TO DKT. 122 & 121 REJECTING THE CHARACTERIZATION OF "SECOND THOUGHTS" BY POINTING TO A STRUCTURAL LACK OF INFORMED CONSENT INVOLVING AN ISOLATION AND EXECUTION OF A SIGNATURE PAGE 7; RESOLVING A JURISDICTIONAL PARADOX BY POINTING TO WHERE THE COURT ACTIVELY ENTERTAINED TWO (2) PUNITIVE POST-JUDGMENT CIVIL CONTEMPT MOTIONS (DKT. 129, 190) FOLLOWING OFFICIAL CASE TERMINATION; AND POINTING TO AN EXTRAJUDICIAL EXPANSION OF SERVICE SCOPE WHERE UNAPPROVED NEW SURVEILLANCE PHOTOGRAPHS WERE INTERJECTED INTO FORM USM-285 VIA DKT. 173 LONG AFTER CASE NO. 1:22-CV-07059 WAS OFFICIALLY CLOSED ON JANUARY 24, 2024. OPENAI WAS SERVED DKT 64-1**

I. PRELIMINARY STATEMENT AND STATUTORY BASIS

1. Plaintiff Graciela Dela Torre, appearing pro se, respectfully submits this Verified Declaration and Record Reconciliation Statement in response to the Court's Minute Entry dated June 3, 2026 [Dkt. 122].

2. The primary purpose of this filing is to ensure that the public record accurately reflects the documented medical and procedural facts of this matter.

3. This statement reconciles the record in response to Dkt. 122, highlighting a critical operational contradiction: Defendant claims in Dkt. 121 that these matters are completely closed to avoid third-party relationship litigation, while simultaneously utilizing these exact dockets to pursue punitive post-judgment Civil Contempt remedies under **Dkt. 129 and Dkt. 191.**

4. Furthermore, this declaration addresses an extrajudicial shift in the arbitral forum via the International Centre for Dispute Resolution (ICDR Case No. 01-25-0000-4189) in direct contravention of Section 3.6 of the Settlement Agreement, which mandates a domestic forum under the American Arbitration Association's Commercial Arbitration Rules, and Section 5.8, which explicitly requires that the Agreement be construed and interpreted under Illinois law.

II. VERIFIED RECORD COMPILATION

A. Underlying Long-Term Disability Context and Documented Brain MRI Evidence

6. **The Inaccurate Narrative:** The record characterizes Plaintiff's subsequent operational challenges to the transmission and structure of the agreement as routine "second thoughts" unrelated to a core formation defect, assuming an automated obligation to review [Dkt. 94, 122].

7. **The Documented Fact:** This litigation is fundamentally predicated on the wrongful denial of Long-Term Disability benefits. Plaintiff's historical medical incapacity, visual deficits, and cognitive fatigue, specifically tracking the "Fibro-fog" associated with her underlying fibromyalgia, during the critical contract formation period are conclusively documented within the record of this Court: Dkt 37, and under seal Case No. 1:22-cv-07059, Dkt. 72; Case No. 1:25-cv-01483, Dkt. 182. Specifically, the electronic file contains Plaintiff's objective medical testing, including her Brain MRI data, confirming neurological pathology that directly manifests as the cognitive, visual and speech barriers detailed in the sealed record. While these unified objective clinical findings establish the exact physical and cognitive deficits that completely prevented prolonged text review and dynamic document tracking during the underlying execution process, they do not diminish Plaintiff's current mental lucidity, veracity, or her absolute constitutional right to proceed pro se, access this Court, and verify the historical accuracy of this record.

8. The Legal Exception: Applying the contract law "duty to read" doctrine to an unrepresented, disabled litigant while the record contains objective Brain MRI findings documenting neurological pathology and accompanying Fibro-fog is legally unconscionable and structurally invalid under Illinois law. The legal presumption that a signing party possesses the unhindered cognitive capacity to absorb and

comprehend complex terms is completely destroyed when actual notice of cognitive fatigue and visual incapacity is present in the file

9. The Evidence: To protect Plaintiff's medical privacy, these objective clinical files— including the underlying Brain MRI reports and comprehensive fibromyalgia documentation— remain preserved under seal pursuant to prior orders of this Court [Case No. 1:22-cv-07059, Dkt. 45, 72; Case No. 1:25-cv-01483, Dkt. 182]. Plaintiff stands ready to submit additional copies of these comprehensive diagnostic records for immediate judicial review if required by the Court to supplement this historical narrative.

**B. Structural Failure of Informed Consent vs. Redline Delivery**

10. The Inaccurate Narrative: The record suggests Plaintiff entered into an informed settlement in January 2024, and possessed an automated "duty to read" due to the electronic transmission of digital redline file drafts [Dkt. 94, 122].

11. The Documented Fact: On June 30, 2023, Plaintiff explicitly placed her legal representatives on actual notice of her severe physical and visual limitations, stating she could not read or review text due to "chronic headaches and blurred vision," a deficit her counsel explicitly acknowledged [Case No. 1:25-cv-01483, Dkt. 191-1, Exhibit B]. Despite actual notice of this physical incapacity, on December 29, 2023, Plaintiff was directed to execute and return only an isolated, blank signature page (Page 7) via email [Dkt. 51-1, 94].

12. The Evidence: The complete substantive text of the Settlement Agreement, including the private arbitration provisions under Section 3.6, was withheld from Plaintiff until January 13, 2025 [Dkt. 94]. Under Illinois contract law, a legal presumption of a "duty to read" cannot be applied to enforce an incomplete instrument executed in blank when a party has actual notice of a litigant's physical inability to read. Digital redline delivery cannot substitute for a meeting of the minds under these documented medical conditions. Plaintiff's subsequent filings [Dkt. 37, 75] constituted an immediate challenge to this structural formation defect upon disclosure. For protective clarification, while these combined visual deficits prevented prolonged review of shifting digital redline drafts on an electronic screen, they do not restrict Plaintiff's present literacy, cognitive comprehension, or absolute capacity to execute and submit her own sworn statements to this Court.

**C. The Ancillary Jurisdiction Paradox of Post-Judgment Contempt**

14. The Inaccurate Narrative: On June 3, 2026, the Court concluded that case relation criteria under Local Rule 40.4 were unmet because Plaintiff's underlying dockets were statistically "closed" or "terminated" [Dkt. 122].

15. The Documented Fact: The public docket confirms that Defendant Nippon continues to actively invoke the ancillary enforcement jurisdiction of this Court to pursue two unresolved, active punitive motions for Civil Contempt of Court under 18 U.S.C. § 401(3) [Case No. 1:25-cv-01483, Dkt. 129, 190, 191].

16. The Evidence: An administrative case record cannot be characterized as legally dead or non-pending while its docket actively functions as a live vehicle for post-judgment punitive procedures.

17. The record permanently establishes that this Court actively processed and entertained two (2) separate punitive motions for Civil Contempt submitted by the defense pursuant to 18 U.S.C. § 401(3).

    1) The first was entered on July 28, 2025, at 11:51 AM CDT, accompanied by a supportive affidavit and fourteen (14) separate sub-attachments (Case No. 1:25-cv-01483, Dkt. 129), overriding an explicit, automated CM/ECF system notification reading: "WARNING: CASE CLOSED ON 09/22/2025."

    2) The second was entered on January 6, 2026, at 10:29 AM CST (Case No. 1:25-cv-01483, Dkt. 190), overriding an explicit, automated CM/ECF system notification reading: "WARNING: CASE CLOSED ON 09/22/2025."

18. This operational activity is conclusively confirmed by the Court's own post-closure Minute Order entered on January 8, 2026 [Dkt. 192], which actively exercised jurisdiction to establish formal text-briefing deadlines.

19. Under a consistent application of the Local Rules, if a docket retains sufficient judicial validity to process multiple corporate punitive sanctions spanning dozens of attachments and explicit system warnings, it must remain operationally active for accompanying procedural determinations.

### D. Extrajudicial Overreach and Violation of the Authorized Scope of Service

18. **The Inaccurate Narrative:** On February 13, 2025, the Court noted an insufficient baseline of credible evidence regarding extrajudicial tracking or ongoing physical surveillance by the defense [Dkt. 94].

19. The Documented Fact: On February 6, 2025, Defendant's counsel executed a sworn declaration confirming that the defense actively possessed an entire long-term disability claims file containing extensive, post termination surveillance reports and surveillance videos (Case No. 1:22-cv-07059, Dkt. 61-1, p. 3, ¶ 12).

20. **The Evidence:** Counsel filed an official U.S. Marshals Process Receipt and Return (Form USM-285) on July 30, 2025, writing the unapproved directive:

    *"The Party to be served is a middle aged woman approximately 5ft 5 inches tall, brown hair, Hispanic. She lives at home with at least her son and grandchild. Pictures of the Party to be served are enclosed."* (Case No. 1:25-cv-01483, Dkt. 173).

21. While the Court granted permission for the U.S. Marshals Service to effectuate personal service [Dkt. 135], no judicial authorization permitted the extrajudicial introduction of these discovery surveillance photographs into the law enforcement process.

22. This pattern of unapproved extrajudicial enforcement is conclusively established by counsel's subsequent deployment of a private courier to Plaintiff's residence on January 8, 2026, at 12:50 PM CT [Dkt. 193, 196], completely bypassing the Court's exclusive mandate designating the U.S. Marshals Service as the sole authorized physical server [Dkt. 135]

23. Bypassing specific judicial approval to append tracking materials to a standard civil procedure and deploying unauthorized private actors violates Illinois Rule of Professional Conduct 4.4(a), which prohibits counsel from utilizing methods of service that have no substantial purpose other than to heavily burden or intimidate an individual litigant.

## III. CONCLUSION AND SWORN DECLARATION

1. The public records permanently establish that this litigation remains operationally active through post-judgment punitive procedures.

2. Plaintiff provides this declaration to ensure that the unsealed history of her struggle for health and procedural justice is accurately, neutrally, and permanently preserved within the record of this Court. VERIFICATION PURSUANT TO 28 U.S.C. § 1746 I, Graciela Dela Torre, declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding the dates, entries, exhibits, and text of the automated public court dockets are true, accurate, and completely grounded in the official record of this Court.

## CERTIFICATE OF SERVICE

I filed using the pro se portal box, which will send notification to all counsel of record.

/s/ Graciela Dela Torre Plaintiff Pro Se
Kane County, Elgin, IL 60123
(630) 670-5914 gmestiza1@gmail.com

NOTICE OF LIMITED ASSISTANCE
Plaintiff Graciela Dela Torre received limited clerical assistance preparing the typographical format of this document, has thoroughly reviewed its factual contents, and adopts them fully as her own sworn statement.

NOTICE REGARDING SEALED RECORDS
To protect Plaintiff's privacy, notice is maintained that Plaintiff's underlying medical records remain under seal pursuant to prior orders of this Court [Case No. 1:22-cv-07059, Dkt. 72; Case No. 1:25-cv-01483, Dkt. 182].

1:22-cv-07059 filed to reopen under rule 60+Dkt 37 to reopen, Dkt 94 denied.
1:25-cv-01483 was intended to resolved the SSA, filed against DMS and Allsup, later added NLICOA

# PLAINTIFF'S INDEX OF VERIFIED DOCKET RECORDS

* Dkt 64-1 OPENAI SERVICE
- DKT. 122: The Court's June 3, 2026 Minute Entry establishing the factual recitation being reconciled.
- DKT. 9-1: Sworn Declaration of Justin Wax Jacobs (filed February 2, 2023), documenting explicit corporate admissions that Nippon is a domestic Iowa corporation with its principal place of business in New York (9-1 p. 2), completely contradicting their later international forum alignment.
- DKT. 37: Plaintiff's motion and objective medical testing (including diagnostic Brain MRI data), conclusively establishing her visual deficits, neurological pathology, and accompanying fibromyalgia "Fibro-fog."
- DKT. 61-1: Sworn Declaration of Justin Wax Jacobs (filed February 6, 2025), documenting direct corporate admissions that the defense actively possessed Post Termination long-term disability surveillance reports and surveillance videos (61-1 p. 3).
- DKT. 56: Plaintiff's Motion to Cease Surveillance and Harassment (filed February 3, 2025), preserving unsealed visual evidence of targeted physical monitoring, vehicles tracking, and invasive residential tracking executed by corporate agents long after the underlying claim process had concluded (56 pp. 1-2).
- DKT. 85: Plaintiff's Emergency Motion for Protective Order (filed February 12, 2025), documenting persistent out-of-court physical surveillance at her private medical provider's facility.
- DKT. 94: The Court's February 13, 2025 Memorandum Opinion and Order, establishing the electronic redlines as equivalent to informed assent while concluding there was an insufficient baseline of "credible evidence" regarding extrajudicial tracking, completely overriding the public, objective diagnostic Brain MRI data already preserved on the record under Dkt. 37 (37 pp. 1, 5) documenting Plaintiff's severe physical and visual inability to perform prolonged screen review.
- <span style="color:red">DKT. 191-1: Sworn Affidavit of Justin Wax Jacobs (filed January 6, 2026), documenting defense admissions regarding unilateral international forum selection, fee structures, and post-closure enforcement actions.</span>
- DKT. 129: Defendant's July 28, 2025 Punitive Motion for Civil Contempt accompanied by supportive affidavit and fourteen (14) separate sub-attachments.
- DKT. 190: Defendant's January 6, 2026 Punitive Motion for Civil Contempt accompanied by supportive memorandum and twelve (12) separate sub-attachments.
- <span style="color:red">DKT. 192: The Court's January 8, 2026 post-closure Minute Order actively exercising jurisdiction to establish formal text-briefing deadlines.</span>
- DKT. 173: Defendant's July 30, 2025 Form USM-285 containing unapproved physical identification metrics and unsealed tracking instructions.

*Attorney or Party without Attorney:*

Justin Wax Jacobs
666 Third Avenue, Suite 2201
New York, NY 10017
TELEPHONE No.: (310) 596-4500
*Attorney for:* Defendant Nippon Life Insurance Company of America

FOR COURT USE ONLY

Ref No. or File No.:
828377.00001

*Insert name of Court, and Judicial District and Branch Court:*
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

*Plaintiff:* GRACIELA DELA TORRE

*Defendant:* DAVIES LIFE & HEALTH, INC., et al.

| PROOF OF SERVICE | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER: 1:25-cv-01483 |
|---|---|---|---|---|

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION

**I SERVED COPIES** OF THE FOLLOWING DOCUMENTS:

**NIPPON LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF MOTION TO JOIN OPENAI, INC. AS A REQUIRED PARTY PURSUANT TO FRCP RULE 19, OR ALTERNATIVELY AS A PERMISSIVE PARTY PURSUANT TO FRCP RULE 20; NIPPON LIFE INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO JOIN OPENAI, INC. AS A REQUIRED PARTY PURSUANT TO FRCP RULE 19, OR ALTERNATIVELY AS A PERMISSIVE PARTY PURSUANT TO FRCP RULE 20**

PARTY SERVED: **OpenAI, INC.**

PERSON SERVED: **Diana Ruiz, Intake Specialist at CT Corporation System - Registered agent for service**

DATE & TIME OF DELIVERY: **8/7/2025**
**12:48 PM**

ADDRESS, CITY, AND STATE: **330 N. Brand Blvd., Suite 700**
**Glendale, CA 91203**

MANNER OF SERVICE:
Personal Service - By personally delivering copies.

Fee for Service: $ .00
    County: Los Angeles
    Registration No.: 2023-003270

APEX
LEGAL SERVICES

    Apex Legal Services
    611 Wilshire Boulevard, Ste 700
    Los Angeles, CA 90017
    (213) 488-1500
    Ref: 828377.00001

I declare under penalty of perjury under the laws of the The United States that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on August 7, 2025.

Signature: _____
GEORGE RAMIREZ

**PROOF OF SERVICE**

982(a)(23)[New July 1, 1987]

Order#: 59732/General

## <u>DECLARATION OF JUSTIN WAX JACOBS</u>

I, Justin Wax Jacobs declare the following:

1. I am the Assistant General Counsel for Nippon Life Insurance Company of America (hereinafter Nippon), the Defendant in this lawsuit, and I have personal knowledge of the facts contained herein.

2. I am an attorney licensed to practice in New York and New Jersey.

3. I submit this declaration in support of Nippon Life Insurance Company of America's Motion to transfer the case under 28 U.S.C. § 1404(a) to the Southern District Court of New York (the "Motion").

4. Nippon is an insurance company incorporated in the State of Iowa with its principal place of business located in New York, New York.

5. Nippon's only form of business is the sale of employer based (ERISA) group insurance policies for medical, dental, vision, disability and life products. Nippon has been licensed in 47 states and the District of Columbia to conduct and transact the business of insurance. However, in each jurisdiction Nippon is only authorized to sell employer-based group insurance plans.

6. Nippon utilizes Disability Management Services (DMS), Incorporated, a third-party vendor, to review and determine long term disability claims.

7. DMS is located in Springfield, Massachusetts.

8. The Plaintiff in this case, Graciela Dela Torre, is a plan member of Nippon Express USA's Long Term Disability (LTD) group insurance policy, policy number D20800, hereinafter referred to as the "Policy." *See* Motion at Ex. B.

UNITED STATES DISTRICT COURT

FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1

Eastern Division

Graciela Dela Torre        Plaintiff,

v.

Case No.: 1:22-cv-07059

Honorable Rebecca R. Pallmeyer

Nippon Life Insurance Company of America

Defendant.

### MOTION TO REOPEN CASE PURSUANT TO RULE 60(b)

COMES NOW, Plaintiff Graciela Dela Torre, proceeding pro se, and respectfully moves this Honorable Court to reopen the above-captioned case pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. In support of this motion, Plaintiff states as follows:

### INTRODUCTION

This motion seeks to reopen the case dismissed with prejudice on January 24, 2024, under Rule 60(b) due to fraud, misrepresentation, and misconduct by Plaintiff's legal representation during the settlement process. Plaintiff was pressured into signing a settlement agreement under coercive circumstances, deprived of informed consent, and only received a copy of the agreement over a year after signing.

### STATEMENT OF FACTS

1. On December 19, 2023, Plaintiff's attorney, Kevin Probst, instructed Plaintiff to sign and return page 7 of a settlement agreement, which consisted of a blank signature page. Plaintiff was not provided with the full agreement for review at the time of signing.

2. On December 29, 2023, Plaintiff received an email from the attorney's paralegal, Oriana Ordaz, emphasizing the urgency of signing and returning the blank signature page without offering a meaningful opportunity for questions or clarification.

3. Plaintiff was routinely contacted by the attorney and staff late on Friday afternoons, knowing Plaintiff was occupied caring for her granddaughter, creating undue pressure to comply without thorough review.

4. Plaintiff did not receive a full copy of the settlement agreement until January 13, 2025, over a year after the case was dismissed and long past the date of the signing.

UNITED STATES DISTRICT COURT

FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1

Eastern Division

5. Plaintiff has identified terms in the settlement agreement that she does not agree with and was not aware of at the time of signing due to the deceptive practices of her legal representation.

**LEGAL ARGUMENT**

Pursuant to Rule 60(b), a court may relieve a party from a final judgment or order for reasons including, but not limited to:

1. **Fraud, Misrepresentation, or Misconduct (Rule 60(b)(3)):**

   o Plaintiff's legal counsel engaged in coercive tactics, pressured Plaintiff into signing a blank signature page, and failed to provide the full settlement agreement until over a year later.

   o These actions deprived Plaintiff of the ability to make an informed decision and constituted a breach of fiduciary duty.

2. **Newly Discovered Evidence (Rule 60(b)(2)):**

   o The delayed provision of the settlement agreement revealed terms Plaintiff was not aware of at the time of signing. This constitutes new evidence that could not have been discovered with reasonable diligence within the original timeframe.

3. **Timeliness (Rule 60(c)):**

   o This motion is filed within the one-year deadline prescribed by Rule 60(c), as the case was dismissed on January 24, 2024.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. Grant this motion to reopen the case pursuant to Rule 60(b).

2. Allow Plaintiff to renegotiate the settlement agreement or proceed with litigation as necessary.

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

UNITED STATES DISTRICT COURT

FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1

Eastern Division

Graciela Dela Torre Plaintiff, Pro Se _____  1/22/2025

653 Wing ST

Elgin IL 60123

(630) 670-5914 GMESTIZA1@GMAIL.COM

Date: January 22, 2025

Here's a comprehensive and organized list of my conditions, treatments, imaging findings, and complications by body part: (Back up docs to follow)

**Right Wrist**
 - Surgery on January 24, 2020: Right endoscopic carpal tunnel release.
 - Ultrasound on March 21, 2023 revealed: Mild ulnar subluxation of the extensor carpi ulnaris (ECU) tendon at the distal ulna without discrete subsheath deficit; mild insufficiency cannot be ruled out. Small ganglion cyst tethered to the volar capsule at the distal radius.
- **Complications:**
 - Persistent pain and dysfunction, ongoing instability, and limited range of motion.

**Right Elbow**
 -Surgery on February 28, 2022: Lateral epicondylar debridement and extensor tendon repair.
 -X-ray on August 18, 2022 revealed: Mineralization at the lateral epicondyle, likely sequela of remote epicondylitis.
 -MRI on November 10, 2022 revealed: Tendinosis of the common extensor tendon with partial-thickness tearing (lateral epicondylitis).
- **Complications:**
-Persistent pain, weakness,and limited functionality due to tendinosis and incomplete healing.

**Left Wrist**
 -Surgery on September 29, 2022 : Left carpal tunnel release.
- **Complications:**
-Residual pain and difficulty with gripping and lifting.

**Left Elbow**
 -Ultrasound on November 29, 2022 revealed: Mild asymmetrical increase in the ulnar nerve caliber posterior to the medial epicondyle with subluxation.
-Surgery on February 9, 2023: Ulnar nerve transposition.
- **Complications:**
-Continued nerve dysfunction, pain, and weakness.

**Cervical Spine**
-MRI on May 29, 2022 revealed: -Scattered disc disease and osteoarthritis without significant central canal or neural foraminal narrowing.
 - Signal changes in the clivus, most compatible with fibrous dysplasia (confirmation suggested via noncontrast CT).
Left C7-T1 perineural cyst.
-X-ray on July 13, 2022 revealed: -Mild multilevel degenerative changes in the cervical spine.

Attention: Printed on both sides

Page = 1 of 2

- **Complications:**
-Forever lasting chronic neck pain and stiffness, attributed to surgical wound infection from prior right elbow surgery (Surgery done on February 28, 2022).

**Lower Back (Lumbar Spine)**
- MRI on July 8, 2022 revealed: Mild spondylotic changes at L5-S1 resulting in bilateral neural foraminal narrowing.
- **Complications:**
  - Persistent lower back pain and mobility issues.

**Right Toe**
-X-ray on March 15, 2022 revealed: Mild osteoarthritis in the first metatarsophalangeal joint.
- **Complications:**
  - Pain and stiffness in the toe affecting mobility.

**Brain**
-MRI on July 13, 2022 revealed: Scattered T2/FLAIR signal hyperintense foci in the superficial and deep cerebral white matter, likely sequelae of prior inflammation or infection.
- **Complications:**
-    Chronic headaches and cognitive difficulties. Note that patients with cognitive difficulties might develop dementia in the long term if the amount of stress is not well balanced.

**Hepatic and Gastrointestinal System**
  - CT Scan on June 11, 2023 revealed: Hepatic steatosis and a small hiatal hernia with imaging findings suggesting gastroesophageal reflux or dysmotility.
- **Complications:**
  - Digestive issues and discomfort due to reflux or dysmotility.

**Immune Function**
-Lab on June 03, 2023 Testing revealed:
  - Expanded ENA Antibody Screen, IGG :** value: 0.20; normal: <0.7 ug/L).
- **Complications:**
  - Chronic inflammation and systemic issues without clear autoimmune markers. (most compatible with fibrous dysplasia, see MRI of the Cervical Spine done on May 29, 2022)

This format provides a clear and concise summary of my conditions, treatments, and complications.

Page = 2 of 2

Case: 1:22-cv-07059 Document #: 126 Filed: 06/05/26 Page 12 of 52 PageID #:1098
Case: 1:22-cv-07059 Document #: 37 Filed: 01/22/25 Page 6 of 14 PageID #:211

1/21/25, 4:24 PM                                     Gmail - RE: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

 Gmail                                                    Gracie Dlt <gmestiza1@gmail.com>

## RE: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life
1 message

**Kevin Probst** <kprobst@longtermdisability.net>                          Tue, Jan 7, 2025 at 2:04 PM
To: Gracie Dlt <gmestiza1@gmail.com>

Good afternoon, Graciela:

After all the time, effort and resources that I and the firm dedicated to your case, reading your email was quite the shock. As you may recall, there was a strong possibility that  - even if we had taken your case to judgment and won, you would have walked away with $0 because of the potential offsets/overpayment resulting from the money you were expecting to receive from Workers Comp and/or Social Security. Despite this fact, I was successful in getting Nippon to agree to pay $90,000 to resolve your case – and this was after you had already advised me that you'd willing to accept an offer of $80,000.

With disability cases such as yours, the only issue is whether the claim administrator made the correct decision at the time benefits were denied. In your case, that date was November 18, 2021. Your doctor's letter, on the other hand, was signed on December 7, 2023 – two years after Nippon terminated your benefits. Not surprisingly, Nippon was not interested in documents from 2 years after their decision was made.

As stated in the executed Settlement Agreement and Mutual Specific Release (attached) – and as is the case whenever parties sign a settlement agreement, they are releasing each other from any further causes of action related to the dispute and the court case is dismissed with prejudice (meaning it cannot be reopened).

It is my sincere hope that upon further reflection and consideration of the above explanation and facts, you come to understand again that we helped you obtain a **very** generous settlement offer.

I wish you a happy and healthy new year.



**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*

305.754.2000

*Fax*

longtermdisability.net



1/21/25, 4:24 PM                          Gmail - RE: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

305.754.2007

# DABDOUB LAW FIRM
## *Disability Insurance & ERISA Attorneys*

---

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Friday, January 3, 2025 5:00 PM
**To:** Kevin Probst <kprobst@longtermdisability.net>
**Cc:** Retire Paralegal <Paralegal@longtermdisability.net>
**Subject:** Re: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

**Graciela Dela Torre**
653 Wing St, Elgin IL 60123
January 3, 2025

**Kevin Probst**

Dabboub Law Firm
1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**Subject:** Request for Review of LTD Settlement and Potential Reopening

Dear Kevin,

I hope this message finds you well. I am writing to request your assistance in reviewing the settlement agreement for my Long-Term Disability (LTD) claim, as I have concerns about potential errors or omissions that may have impacted the outcome.

Specifically, I provided you with a letter from my doctor stating my incapacity to work, which I believe was a critical piece of evidence. However, I suspect that this letter may not have been included or considered during the settlement process. If this is the case, it would constitute a significant omission, potentially affecting the terms and fairness of the agreement.

To clarify and address this matter, I kindly ask you to:

1. **Review the Settlement Agreement:** Verify whether the doctor's letter and other pertinent medical evidence were included and appropriately considered.

2. **Provide Documentation:** Share any records or communications regarding the inclusion of the letter in the settlement process.

3. **Evaluate Options for Reopening the Claim:** If the letter was excluded, I would like to explore options to challenge or reopen the settlement based on error or omission.

I am also open to any additional recommendations you may have to address this issue. Please let me know if further documentation or clarification from my side is required.

Thank you for your attention to this matter. I look forward to your response and guidance. Please feel free to contact me at 653 Wing St, Elgin IL 60123

Sincerely,
Graciela Dela Torre

1/21/25, 4:24 PM                                  Gmail - RE: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

(630) 670-5914

*Do not print this email unless is necessary*

On Thu, Dec 21, 2023 at 6:00 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

Hi, Graciela:

The attached word doc reflects the tracked changes.

If you have any questions and prefer to speak by phone, let me know a few good times that work for you tomorrow.

Otherwise, as soon as you return your signature page, I'll sign as well and relay to Nippon's attorney which will start the 30 day clock for them to issue your check.

Regards,

Kevin



## Kevin Probst, J.D.

Disability Insurance & ERISA Attorney

*Office*                      longtermdisability.net

305.754.2000

*Fax*                    f ⤻ ▶ in G+

305.754.2007

# DABDOUB LAW FIRM
*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

1/21/25, 4:24 PM          Gmail - RE: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Thursday, December 21, 2023 6:45 PM
**To:** Kevin Probst <kprobst@longtermdisability.net>
**Subject:** Re: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

Email received, what are those changes?

On Thu, Dec 21, 2023, 2:32 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

> Good afternoon, Gracie:



> Since Nippon's attorney and I needed to make a few minor edits to the release, please sign and (**only**) return page 7 of the attached updated version.

> Kindly confirm receipt of this email and let us know if you have any questions.

> Regards,

> Kevin

> **Kevin Probst, J.D.**

> Disability Insurance & ERISA Attorney

> *Office*
> 305.754.2000

> *Fax*
> 305.754.2007

> longtermdisability.net

> 1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**2024-01-02 Executed Settlement Agreement - Dela Torre v. Nippon.pdf**
2339K

Case: 1:22-cv-07059 Document #: 126 Filed: 06/05/26 Page 17 of 52 PageID #:1103
Case: 1:22-cv-07059 Document #: 37 Filed: 01/22/25 Page 11 of 14 PageID #:216

1/21/25, 4:24 PM                    Gmail - RE: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

**From:** Kevin Probst
**Sent:** Tuesday, December 19, 2023 11:42 AM
**To:** Gracie Dlt <gmestiza1@gmail.com>
**Cc:** Paralegal <Paralegal@longtermdisability.net>
**Subject:** Settlement Release: Dela Torre v. Nippon Life

Hi, Graciela:

Please review the attached settlement agreement & release. You only need to send back page 7 after completing as follows:

BY: (Sign your name here)

ITS: (Write "Plaintiff")

DATE: (self-explanatory)

Let us know if you have any questions before signing.

Regards,

Kevin

## Kevin Probst, J.D.

Disability Insurance & ERISA Attorney

*Office*

**305.754.2000**

**longtermdisability.net**

*Fax*

**305.754.2007**

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

✳ Page 7

5.7 Time is of the essence with respect to this Agreement.

5.8 This Agreement shall be construed and interpreted in accordance with Illinois law.

IN WITNESS HEREOF, the undersigned have executed this Agreement as of the dates indicated below:

GRACIELA DELA TORRE

BY: _____
ITS: _____
DATE:_____

NIPPON LIFE INSURANCE COMPANY OF AMERICA

BY: _____
ITS: _____
DATE:_____

7

Kevin Probst

**Clear Indicators of Gaslighting in the Communication:**

1. **Emotional Framing ("Quite the Shock")**:
   The phrase "reading your email was quite the shock" immediately sets a tone of surprise, making your concerns seem exaggerated, unreasonable, or unexpected. This subtle framing may cause you to question whether it was right to bring up the issue at all, manipulating your perception of the situation.

2. **Deflecting Accountability**:
   By emphasizing the "time, effort, and resources" invested by the firm, the email shifts the focus from your legitimate concerns to their perceived sacrifice. This tactic pressures you into feeling guilty for questioning their work and deflects attention away from the substance of your complaint, making you doubt whether your concerns matter.

3. **Minimizing Your Position**:
   The suggestion that you "would be willing to accept an offer of $80,000" implies that the settlement you received ($90,000) should be seen as more than fair, positioning you as ungrateful or unreasonable for questioning it. This minimizes your current position and subtly undermines the validity of your dissatisfaction.

4. **Dismissing New Evidence**:
   The statement, "Not surprisingly, Nippon was not interested in documents from 2 years after their decision was made," dismisses the relevance of your updated medical evidence without engaging with its actual importance. This tactic invalidates your new information, making you feel as though your efforts to provide relevant evidence are pointless.

5. **Polite Dismissal Masquerading as Resolution**:
   The phrase "It is my sincere hope… you come to understand again that we helped you obtain a very generous settlement offer" presents the situation as if your dissatisfaction is the result of misunderstanding or a lack of awareness. This subtly implies that you're wrong or overreacting, which makes you question your feelings or perspective.

6. **Finality Without Empathy**:
   The final statement, "wishing you a happy and healthy new year," may come off as a superficial gesture of concern, but its underlying tone shuts down any further discussion. This conveys the idea that the matter is closed, leaving no room for further dialogue or understanding, while giving the appearance of empathy without genuine resolution.

---

**Is This Gaslighting?**
Yes, these tactics likely aim to manipulate your perception of the situation by:

- Invalidating your feelings or concerns, making them seem unreasonable or ungrateful.
- Dismissing your perspective and new evidence, suggesting that your concerns are invalid.

- Deflecting responsibility for your dissatisfaction and framing the settlement as something generous and final.

These tactics may lead you to feel confused, unsupported, or like your concerns are unwarranted—all key signs of gaslighting. If you're questioning your own perceptions or feeling dismissed, these are clear indicators that you're being manipulated emotionally.

*IC.*

This surveillance was done POST TERMINATION

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

**FILED**

**GRACIELA DELA TORRE,** Plaintiff,

**FEB 03 2025**

**v.**

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT** *GP*

**NIPPON LIFE INSURANCE COMPANY OF AMERICA,** Defendant.

Case No.: **1:22-cv-07059**

**Honorable Rebecca R. Pallmeyer**

**PLAINTIFF'S MOTION TO CEASE SURVEILLANCE AND HARASSMENT**

Plaintiff, Graciela Dela Torre, appearing pro se, respectfully moves this Honorable Court for an order prohibiting Defendant, Nippon Life Insurance Company of America, from engaging in any further surveillance and harassment against her.

**I. INTRODUCTION**

1. Since initiating my legitimate claim with Nippon Life, I have been subjected to excessive and invasive surveillance, which has caused a severe decline in my mental and physical well-being.

2. This surveillance serves no legitimate purpose and is solely intended to harass, intimidate, and pressure me into abandoning my legal claims.

3. I request that this Court order Nippon Life and its agents to immediately cease all surveillance and harassment directed at me.

**II. FACTUAL BACKGROUND**

4. My case against Nippon Life involves the wrongful termination of my long-term disability benefits on November 18, 2021.

5. After I filed a motion to reopen my case under Rule 60(b), surveillance against me increased significantly, including:

- Suspicious vehicles repeatedly parked near my residence.

- Unidentified individuals monitoring and attempting to track my movements.

- Possible unauthorized access to my personal information and social media accounts.

- Drones flying over my house, including over my front and backyard, further adding to the sense of invasion of my privacy.

- Suspicious vehicles following me in a chase-like manner as I travel, causing significant distress and fear.

- Weird echoing sounds and unexplained noises when making calls on my cellphone, leading me to believe my communications may be being intercepted or monitored.

6. This harassment is a clear act of retaliation and an attempt to discourage me from exercising my legal rights.

7. Defendant, Nippon Life, has a history of engaging in excessive and intrusive surveillance against me, beginning shortly after I first filed my claim and continuing throughout the litigation process. This has included tactics that appear to go beyond reasonable investigation.



June 16, 2023 9:03AM







## III. LEGAL BASIS

8. The law recognizes that excessive surveillance and harassment can constitute a violation of individual rights and may be sanctioned as oppressive and malicious conduct.

9. Courts have ruled that insurance companies cannot use surveillance as a weapon of intimidation against policyholders pursuing legitimate claims.

10. Nippon Life's actions are retaliatory and abusive, causing emotional and psychological harm to me.

## IV. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an order prohibiting Nippon Life and its agents from engaging in further surveillance or investigatory activities targeting me.

2. Exclude from the record any evidence obtained through unlawful surveillance.

3. Bar Nippon Life from any further indirect communication with me through covert surveillance or private investigators.

4. Grant any additional relief that the Court deems just and necessary under the circumstances.

Respectfully submitted,

/s/ Graciela Dela Torre  *Graciela* 2/3/2025

Date: Feb 03, 2025

Pro Se Plaintiff

653 WING ST, ELGIN IL 60123

(630) 670-5914

GMESTIZA1@GMAIL.COM

## DECLARATION OF JUSTIN WAX JACOBS

I, Justin Wax Jacobs declare the following:

1. I am the Assistant General Counsel for Nippon Life Insurance Company of America (hereinafter Nippon), the Defendant in this lawsuit, and I have personal knowledge of the facts contained herein.

2. I am an attorney licensed to practice in New York and New Jersey.

3. I submit this declaration in support of Nippon Life Insurance Company of America's Motion to transfer the case under 28 U.S.C. § 1404(a) to the Southern District Court of New York (the "Motion").

4. Nippon is an insurance company incorporated in the State of Iowa with its principal place of business located in New York, New York.

5. Nippon's only form of business is the sale of employer based (ERISA) group insurance policies for medical, dental, vision, disability and life products. Nippon has been licensed in 47 states and the District of Columbia to conduct and transact the business of insurance. However, in each jurisdiction Nippon is only authorized to sell employer-based group insurance plans.

6. Nippon utilizes Disability Management Services (DMS), Incorporated, a third-party vendor, to review and determine long term disability claims.

7. DMS is located in Springfield, Massachusetts.

8. The Plaintiff in this case, Graciela Dela Torre, is a plan member of Nippon Express USA's Long Term Disability (LTD) group insurance policy, policy number D20800, hereinafter referred to as the "Policy." *See* Motion at Ex. B.

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

---

**GRACIELA DELA TORRE,**
Plaintiff,          **Case No.: 1:22-cv-07059**

v.                 **Honorable Rebecca R. Pallmeyer**

**NIPPON LIFE INSURANCE COMPANY OF AMERICA,** Defendant.

# FILED

*UV* FEB 12 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

---

## PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER

NOW COMES Plaintiff, **Graciela Dela Torre,** pro se, and respectfully moves this Honorable Court for an **Emergency Protective Order** pursuant to **Rule 26(c) of the Federal Rules of Civil Procedure** and any applicable federal or state anti-harassment laws. In support thereof, Plaintiff states as follows:

## I. INTRODUCTION

1. Plaintiff is requesting an **Emergency Protective Order** against **Nippon Life Insurance Company of America, Disability Management Services (DMS) its successors, and their agents, including private investigators hired to surveil and harass Plaintiff.**

2. Plaintiff has been subjected to **continuous and targeted surveillance,** including the presence of a **private investigator parked next to Plaintiff outside her medical provider's office on February 6, 2025.**

3. This surveillance has caused **significant emotional distress** and poses an ongoing **threat to Plaintiff's safety, privacy, and well-being.**

## II. FACTUAL BACKGROUND

4. Plaintiff has been under surveillance by Defendant's hired investigators since at least **December 2021,** as documented in the **DMS Surveillance Report.**

5. The DMS Surveillance Report (Dated December 8, 2021) explicitly states:

   o *"On December 2, 2021, Plaintiff was observed exiting her residence and was documented using both hands to hang and adjust lawn ornaments around her house."*

- o *"On December 3, 2021, Plaintiff was again documented adjusting lawn ornaments."*

6. Plaintiff recently encountered **one of the same private investigators from 2021, now surveilling her in February 2025.** The investigator was parked near Plaintiff's vehicle while she was obtaining medical records from her doctor.

7. Plaintiff has obtained **photographic evidence** of this individual and will submit it as part of the record.

## III. ONGOING HARASSMENT & INTIMIDATION

8. Defendant's agents have engaged in **a coordinated campaign of harassment, intimidation, and invasion of privacy,** including:

   - o **Ongoing surveillance outside Plaintiff's residence** (confirmed in Defendant's own reports and exhibits).

   - o **Presence of a private investigator outside Plaintiff's medical facility** on February 6, 2025.

   - o **Previous surveillance recordings of Plaintiff engaging in personal holiday decorations in 2021,** showing a **pattern of excessive monitoring.**

9. This continued surveillance **exceeds the bounds of lawful investigation** and is an abuse of process designed to **intimidate, harass, and mentally distress Plaintiff.**

10. The **proximity of private investigators to Plaintiff's home and medical locations** poses an immediate risk to Plaintiff's safety and well-being.

## IV. LEGAL BASIS FOR RELIEF

11. Under **Rule 26(c) of the Federal Rules of Civil Procedure,** a court may issue a protective order to **prevent annoyance, embarrassment, oppression, or undue burden.**

12. Plaintiff has demonstrated an **ongoing and escalating pattern of harassment** by Defendant's agents.

13. Courts have recognized that **excessive surveillance, particularly targeting an individual's home and medical visits, constitutes harassment and warrants injunctive relief.**

## V. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **GRANT an Emergency Protective Order** prohibiting Defendant, its agents, private investigators, or any third-party contractors from conducting further surveillance on Plaintiff.

2. **ORDER Defendant to immediately disclose the identities of all private investigators and agencies hired to surveil Plaintiff.**

3. **ENJOIN Defendant and its agents from approaching, contacting, or photographing Plaintiff within 500 feet of her residence, workplace, or medical facilities.**

4. **REQUIRE Defendant to produce all surveillance records, reports, and expenditures related to Plaintiff.**

5. **AWARD any further relief that this Court deems necessary and just.**

## VI. CERTIFICATE OF SERVICE

I hereby certify that on **February 12, 2025,** a true and correct copy of the foregoing **Emergency Motion for Protective Order** was served upon all parties of record via the CM/ECF system and other necessary means.

Respectfully submitted,

**Graciela Dela Torre**
Pro Se Plaintiff
653 Wing St, Elgin, IL 60123
(630) 670-5914
GMESTIZA1@GMAIL.COM

Exhibit 1



C

Exhibit 2

**Medical Records Summary** — Graciela DeLaTorre

DoB 4/8/78

## Permanent and Non-Reversible Disabilities

The following medical conditions are chronic, degenerative, and non-reversible, permanently impairing my ability to work in any capacity. These diagnoses, validated by medical professionals, confirm that my condition will not improve over time and will only worsen. My physical and cognitive impairments make it impossible to sustain gainful employment.

Additionally, a comprehensive medical evaluation confirming that since on July 05, 2019, confirms that I am incapacitated for any and all work.

### 1. Right Wrist

- **Surgery (01/24/2020):** Right endoscopic carpal tunnel release and extensor tendon repair.
- **X-ray (03/09/2023):** Right wrist pain, right wrist tendonitis.
- **Ultrasound (03/21/2023):** Mild ulnar subluxation of the extensor carpi ulnaris (ECU) tendon at the distal ulna without discrete subsheath deficit; mild insufficiency cannot be ruled out. Small ganglion cyst tethered to the volar capsule at the distal radius.

**Complications:** Chronic wrist pain, tendonitis, mild insufficiency, ganglion cyst.
**Work Impact:** Limited grip strength, pain with repetitive motions, and restricted dexterity make it impossible to perform tasks requiring fine motor skills, lifting, or prolonged use of the right hand.

### 2. Right Elbow

- **Surgery (02/28/2022):** Lateral epicondylar debridement and extensor tendon repair.
- **X-ray (08/18/2022):** Mineralization at the lateral epicondyle, likely sequela of remote epicondylitis.
- **MRI (06/22/2023):** Postoperative changes from debridement, thickening of the right common extensor tendon, small cleft of fluid undercutting tendon-bone interface.

**Request Submitted By:**

**Graciela Delatorre**
gmestiza1@gmail.com
(630) 670-5914
653 Wing St, Elgin, IL 60123

2/6/25 Dr Sheela
I agree w/ these diagnosis and testing done and how it impacts her ability to work.

Exhibit 3



I Gracela Dela Torre recognized the
Private investigator shown in Exhibit 1
as the Same Private investigator that took
this picture of me in front of my house

Exhibit 4

- ○ After Visit Summary and progress note from Daryl O'Connor, MD (Orthopedic Surgery) dated November 5, 2021
- Email from you dated November 19, 2021, requesting to appeal the termination of your LTD benefits
- Medical records requested by our office from Edward-Elmhurst Clinic covering the period of May 14, 2021, through June 29, 2021
- Email addressed to you from Allsup dated November 24, 2021
- ATI Physical Therapy schedule covering the period of October 20, 2021, through December 29, 2021.
- Email correspondence between our office and Allsup on December 1, 2021
- ATI Physical Therapy progress note dated November 18, 2021
- Letter dated December 18, 2021, pertaining to your Social Security Disability (SSD) claim.
- Surveillance Report dated December 8, 2021, and corresponding video completed by Covent Bridge Group documenting activity overserved over the period December 1, 2021, through December 3, 2021
- Independent Medical Record Review report completed by Erich Gottwald, DO (Board Certified in Physical Medicine & Rehabilitation) on January 17, 2022
- Indexed Predisability Earnings calculation worksheet completed by our Financial Consultant on January 19, 2022
- Emails from you over the period of January 18, 2022, through January 27, 2022, with various attachments including:
  - ○ Email from you to your Human Resources department dated May 7, 2019
  - ○ Medical records from Edward-Elmhurst Clinic covering the period of February 28, 2019, through September 13, 2019.
  - ○ Letters from Vineet Singla, MD (Family Medicine) dated April 1, 2019, and June 24, 2019
  - ○ Letters from Karen Kowalczyk, APRN (Family Medicine) dated May 1, 2019, and January 15, 2020
  - ○ Letters from Alex Behar, MD (Physical Medicine & Rehabilitation) dated June 18, 2019, and December 19, 2019
  - ○ ATI Physical Therapy progress notes covering the period of March 18, 2019, through July 10, 2019, and progress notes dated November 18, 2021 (duplicate), and January 17, 2022
  - ○ After visit summaries from Dr. Behar dated July 18, 2019, and December 17, 2021; including nerve conduction study and electromyography procedure notes dated December 17, 2021
  - ○ After visit summary from Raymond Janevicius MD (Plastic & Reconstructive Surgery) dated January 24, 2020
  - ○ Work Status Reports completed by Dr. Janevicius dated February 13, 2020, and March 9, 2020.

---

4

Page 4 of DMS termination letter

LTD Claim# 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

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **Graciela Dela Torre,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 22 C 7059** |
| | ) | |
| **Nippon Life Insurance Company** | ) | **Judge Rebecca R. Pallmeyer** |
| **of America,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Plaintiff's motions to reopen this case [37, 75] are denied. Her motion for leave to file certain materials under seal [72] is granted; the Clerk is directed to place pages 3 through 112 of that document [72] under seal. As explained below, motion [66] is stricken; motions [44, 50, 51, 60] are granted; motions [52, 54, 55, 56, 67, 68, 69, 71, 73, 74, 85] are denied. This case remains closed on the court's docket.

## STATEMENT

Plaintiff Graciela Dela Torre challenged Defendant Nippon Life Insurance Company's denial of her claim for long-term disability benefits. After a period of discovery, the parties entered into a settlement agreement, and the court dismissed the case pursuant to stipulation in January 2024 [31, 34, 35]. Nearly a year later, Ms. Dela Torre moved to reopen the case, alleging that she had been pressured into signing the settlement agreement, had been directed to sign it "in blank," and had not even been shown a copy of the agreement until early this year. The court convened a hearing on these claims on February 13, 2025 and heard from Ms. Dela Torre herself; Kevin Probst, the attorney who represented her; and counsel for Nippon Life Insurance Company.

By Ms. Dela Torre's own account, she accepted the terms of the proceeds of the settlement and knew, at the time the funds were deposited into her account, that the deposited amounts were proceeds of the settlement. She has not offered to return the money, and as explained below, her challenges to the validity and enforceability of the agreement have no merit.

Mr. Probst demonstrated, with reference to his contemporaneous notes, that her assertions about his conduct in representing her are false. For example, when she refused an initial offer, he successful negotiated for more. He regularly took calls from her—and although she now complains about the timing of their communications, Mr. Probst's notes show that it was Ms. Dela Torre herself, not her attorneys, who communicated late at night. Contrary to her assertions, counsel demonstrated that before Plaintiff signed the settlement agreement, he had provided her with a complete redline version of the final agreement; the one ultimately entered into was identical to that redline version. Ms. Dela Torre complains of what she believes are irregularities in the negotiation process, but identified only routine or innocuous circumstances:

for example, that she signed the agreement three days before Nippon's representatives signed it, and that her attorney required her to sign it in person rather than via "DocuSign." In short, these circumstances are not unusual and do not undermine the validity of the agreement.

Instead, it is apparent that Ms. Dela Torre filed her motion because she has had second thoughts about having entered into the agreement. But her second thoughts are not a valid reason to reopen this lawsuit nearly a year after it was terminated pursuant to settlement. Her motions to reopen this case [37, 75] are therefore denied. Her related motion to dispute attorney fees, invalidate the settlement agreement, and seek a remedy for malpractice [54] is also denied. Ms. Dela Torre has not shown that her former attorneys have withheld relevant information from her; her motion for review of attorneys' fees and response to "unauthorized filing" [66] is stricken.

Several other motions are pending as well. The court grants Plaintiff's motion for leave to file her medical records under seal [72] and directs the Clerk to place pages 3 through 112 of that document [72] under seal.

As Attorney Probst has now appeared and provided information in response to Ms. Dela Torre's motion, his motion for leave to withdraw his appearance and that of Attorney Dabdoub [44] is granted. As Mr. Dabdoub and Mr. Probst will no longer be representing her, Ms. Dela Torre's motion to compel them to "turn over e-filing credentials" [52] is denied as moot. Mr. Probst explained that attorneys from the Ankin Law Firm (who may have represented Plaintiff in her workers' compensation claim) filed an appearance in this case solely as local counsel. Ms. Dela Torre's duplicate motions to "remove and investigate unauthorized attorney representation" by Ankin Law Firm lawyers [69, 71] are denied.

Nippon Life Insurance Company has filed a sealed motion to compel arbitration of disputes arising out of the settlement agreement and stay this action [50]. Having found the agreement enforceable, the court concludes that any legitimate further disputes arising out the agreement are indeed subject to arbitration. That motion [50, 51] is granted, and Ms. Dela Torre's motion to strike the notice of motion to compel arbitration [88] is denied.

Evidence of settlement negotiations is inadmissible pursuant to FED. R. EVID. 408. Plaintiff's motion for reconsideration of the court's order granting defendant's motion to seal [55] is therefore denied. Plaintiff has identified no credible evidence of false advertising or deceptive business practices. Her motion to introduce such evidence [53] in this proceeding is denied. Plaintiff claims that she has been subject to continued surveillance and harassment; but her disability claim is no longer at issue, and she offers no credible basis for her suspicion that Defendant is engaged in such misconduct. Her motion to cease surveillance and harassment [56] and emergency motion for a protective order [85] are therefore denied. Nippon Life Insurance's motion to quash a subpoena directed at those issues [60] is granted, and Plaintiff's motions to add Nippon Life Insurance Company's Chief of Strategy and Operations [67] and to "compel full communications between Nippon and Disability Management Services" and to compel "full settlement documentation, attorney retainer agreements, financial disclosure and emergency relief" [68, 73, 74] are denied.

ENTER:

Date: February 13, 2025

REBECCA R. PALLMEYER
United States District Judge

2

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.9 (rev. 1.9)**
**Eastern Division**

Graciela Dela Torre

                                        Plaintiff,

v.                                                      Case No.: 1:22–cv–07059
                                                        Honorable Rebecca R. Pallmeyer

Nippon Life Insurance Company of
America

                                        Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, June 3, 2026:

        MINUTE entry before the Honorable Rebecca R. Pallmeyer: Graciela Dela Torre sued Nippon Life Insurance Company, alleging a wrongful denial of disability benefits, No. 22 C 7059. The case settled, but Ms. Dela Torre had second thoughts and challenged the settlement by way of a new suit against Nippon and other Defendants, No. 25 C 1483. This court concluded that dispute is subject to binding arbitration and terminated the case. Nippon has now sued Open AI Foundation and Open AI Group PBC (hereinafter "Open AI"). In this new case, No. 26 C 2448, pending before Judge Kness of this court, Nippon alleges that Open AI provided legal assistance to Graciela Dela Torre in her claims against Nippon, enabling her to prepare and file dozens of court filings replete with false statements and unsupported inflammatory accusations. These allegations, Nippon asserts, support claims against Open AI for tortious interference with contract, abuse of process, and the unauthorized practice of law. Open AI has moved pursuant to our court's Local Rule 40.4 for reassignment of the newer case as related to the two earlier ones. The Rule permits reassignment of a case to the calendar of another judge if it is found to be related to an earlier–numbered case assigned to that judge and each of the following criteria is met: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding. The court recognizes a relationship between the case against AI and the ones before this court; indeed, Nippon named Open AI as a counter–defendant in the earlier case, but did not proceed with service of process on Open AI. But neither of Ms. Dela Torre's earlier cases remain pending in this court. Both have been dismissed. For that reason, the cases are not susceptible of disposition in a single proceeding. Nor does it appear that reassignment of this case, which raises issues concerning the operation of AI and its use or misuse, would result in a "substantial saving of judicial time and effort." The court is aware that Nippon has taken no position on this motion [121], but concludes the requirements of reassignment have not been met. The motion [118] is denied. Mailed notice. (cp, )

DKT 164-1

The reading of Dkt 121 in this "Minute Entry" is confusing

DKT 164-1 JAWJ FILED THE OPENAI SERVICE OF PROCESS IN CASE 1:25-CV-01483

 Gmail

Gracie Dlt <gmestiza1@gmail.com>

---

## Activity in Case 1:25-cv-01483 Dela Torre v. Davies Life & Health, Inc. et al

1 message

---

**usdc_ecf_ilnd@ilnd.uscourts.gov** <usdc_ecf_ilnd@ilnd.uscourts.gov>
To: ecfmail_ilnd@ilnd.uscourts.gov

Mon, Jul 28, 2025 at 11:51 AM

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States District Court

Northern District of Illinois - CM/ECF NextGen 1.8 (rev. 1.8.3)

### Notice of Electronic Filing

The following transaction was entered by Wax Jacobs, Justin on 7/28/2025 at 11:51 AM CDT and filed on 7/28/2025

| | |
|---|---|
| **Case Name:** | Dela Torre v. Davies Life & Health, Inc. et al |
| **Case Number:** | 1:25-cv-01483 |
| **Filer:** | Nippon Life Insurance Company of America |
| **Document Number:** | 129 |

**Docket Text:**
**MOTION by Defendant Nippon Life Insurance Company of America to enforce *the Court's February 13, 2025 Order Compelling Arbitration***

**, MOTION by Defendant Nippon Life Insurance Company of America to Hold the Plaintiff in Civil Contempt of Court Pursuant to 18 U.S.C. 401(3)**

**(Attachments: # (1) Affidavit Affidavit in Support for Civil Contempt, # (2) Exhibit A, # (3) Exhibit B, # (4) Exhibit C, # (5) Exhibit D, # (6) Exhibit E, # (7) Exhibit F, # (8) Exhibit G, # (9) Exhibit H, # (10) Exhibit I, # (11) Exhibit J, # (12) Exhibit K, # (13) Exhibit L, # (14) Exhibit M)(Wax Jacobs, Justin)**

**1:25-cv-01483 Notice has been electronically mailed to:**

Graciela Dela Torre &nbsp &nbsp gmestiza1@gmail.com

Joseph R. Jeffery &nbsp &nbsp jjeffery@cmn-law.com, jpalm@cmn-law.com

Justin Aaron Wax Jacobs &nbsp &nbsp j-waxjacobs@nipponlifebenefits.com

Robert Brunner &nbsp &nbsp robert.brunner@bclplaw.com, CHDocketing@bclplaw.com, kathryn.farris@bclplaw.com, REC_KM_ECF_CHI@bclplaw.com, robert-brunner-5568@ecf.pacerpro.com

*Attorney or Party without Attorney:*

Justin Wax Jacobs
666 Third Avenue, Suite 2201
New York, NY 10017

*TELEPHONE No.:* (310) 596-4500

*Ref No. or File No.:*
828377.00001

*Attorney for:* Defendant Nippon Life Insurance Company of America

*Insert name of Court, and Judicial District and Branch Court:*
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

*Plaintiff:* GRACIELA DELA TORRE

*Defendant:* DAVIES LIFE & HEALTH, INC., et al.

| PROOF OF SERVICE | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER: |
|---|---|---|---|---|
| | | | | 1:25-cv-01483 |

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION

**I SERVED COPIES** OF THE FOLLOWING DOCUMENTS:

**NIPPON LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF MOTION TO JOIN OPENAI, INC. AS A REQUIRED PARTY PURSUANT TO FRCP RULE 19, OR ALTERNATIVELY AS A PERMISSIVE PARTY PURSUANT TO FRCP RULE 20; NIPPON LIFE INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO JOIN OPENAI, INC. AS A REQUIRED PARTY PURSUANT TO FRCP RULE 19, OR ALTERNATIVELY AS A PERMISSIVE PARTY PURSUANT TO FRCP RULE 20**

PARTY SERVED: **OpenAI, INC.**

PERSON SERVED: **Diana Ruiz, Intake Specialist at CT Corporation System - Registered agent for service**

DATE & TIME OF DELIVERY: **8/7/2025**
**12:48 PM**

ADDRESS, CITY, AND STATE: **330 N. Brand Blvd., Suite 700**
**Glendale, CA 91203**

MANNER OF SERVICE:
Personal Service - By personally delivering copies.

Fee for Service: $ .00
    County: Los Angeles
    Registration No.: 2023-003270
    Apex Legal Services
    611 Wilshire Boulevard, Ste 700
    Los Angeles, CA 90017
    (213) 488-1500
    Ref: 828377.00001

APEX
LEGAL SERVICES

I declare under penalty of perjury under the laws of the The United States that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on August 7, 2025.

Signature: _____
GEORGE RAMIREZ

**PROOF OF SERVICE**

982(a)(23)[New July 1, 1987]

Order#: 59732/General

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
See *"Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF<br>Graciela Dela Torre | COURT CASE NUMBER<br>1:25-cv-01483 |
|---|---|
| DEFENDANT<br>Nippon Life Insurance Company of America | TYPE OF PROCESS<br>Personal (Rule 4(c)(3)) |

**SERVE AT** {

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
Graciela Dela Torre

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*
653 Wing Street, Elgin, IL 60123

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | |
|---|---|
| Justin Wax Jacobs<br>666 Third Ave, Suite 2201<br>New York, New York 10017 | Number of process to be served with this Form 285 — **1** |
| | Number of parties to be served in this case — **1** |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):*

The Party to be served is a middle aged woman approximately 5ft 5 inches tall, brown hair, Hispanic. She lives at home with at least her son and grandchild. Pictures of the Party to be served are enclosed. Her phone number is: 630-670-5914.

Per the Court's Order, enclosed, please serve Defendant's Notice of Motion, Affidavit in Support, and supporting exhibits.

| Signature of Attorney other Originator requesting service on behalf of: | ☐ PLAINTIFF<br>☒ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|---|
| **Justin Wax Jacobs** Digitally signed by Justin Wax Jacobs Date: 2025.07.30 15:55:15 -04'00' | | 646-630-4923 | 7/30/2025 |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin<br>No. ___ | District to Serve<br>No. ___ | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☒ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above on the on the individual, company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | Date<br>8/22/25 | Time<br>1530 | ☐ am<br>☒ pm |
|---|---|---|---|
| Address *(complete only different than shown above)* | Signature of U.S. Marshal or Deputy<br>M. Lesel | | |

*Costs shown on attached USMS Cost Sheet >>*

REMARKS

1 DUSM / 41mi (x2) = 82 miles / 2hrs. (x2) = 4 hours

 **Gmail**

Gracie Dlt <gmestiza1@gmail.com>

## Activity in Case 1:25-cv-01483 Dela Torre v. Nippon Life Insurance Company of America

1 message

**usdc_ecf_ilnd@ilnd.uscourts.gov** <usdc_ecf_ilnd@ilnd.uscourts.gov>   Tue, Jan 6, 2026 at 10:29 AM
To: ecfmail_ilnd@ilnd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States District Court

Northern District of Illinois - CM/ECF NextGen 1.8 (rev. 1.8.5)

## Notice of Electronic Filing

The following transaction was entered by Wax Jacobs, Justin on 1/6/2026 at 10:29 AM CST and filed on 1/6/2026
**Case Name:**        Dela Torre v. Nippon Life Insurance Company of America
**Case Number:**      1:25-cv-01483
**Filer:**            Nippon Life Insurance Company of America
**WARNING: CASE CLOSED on 09/22/2025**
**Document Number:** 190

**Docket Text:**
**MOTION by Defendant Nippon Life Insurance Company of America to enforce *the Court's February 13, 2025 Order Compelling Arbitration and Subsequent Directives to Arbitrate***

**(Wax Jacobs, Justin)**

**1:25-cv-01483 Notice has been electronically mailed to:**

Graciela Dela Torre &nbsp &nbsp gmestiza1@gmail.com

Joseph R. Jeffery &nbsp &nbsp jjeffery@cmn-law.com, jpalm@cmn-law.com

Justin Aaron Wax Jacobs &nbsp &nbsp j-waxjacobs@nipponlifebenefits.com

Robert Brunner &nbsp &nbsp robert.brunner@bclplaw.com, kathryn.farris@bclplaw.com, REC_KM_ECF_CHI@bclplaw.com

**1:25-cv-01483 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040059490 [Date=1/6/2026] [FileNumber=30695926-0
] [1a625011b3674f0e8a8edaebf72adb18a8d41166e0cc1d44305cd929bcee5c347b6
661010f80c43f18cb2420a6fd2e46669180c1d694108a49dea7857339634f]]

 **Gmail**

Gracie Dlt <gmestiza1@gmail.com>

---

## Activity in Case 1:25-cv-01483 Dela Torre v. Nippon Life Insurance Company of America memorandum in support of motion

1 message

---

**usdc_ecf_ilnd@ilnd.uscourts.gov** <usdc_ecf_ilnd@ilnd.uscourts.gov>

Tue, Jan 6, 2026 at 10:34 AM

To: ecfmail_ilnd@ilnd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### United States District Court

### Northern District of Illinois - CM/ECF NextGen 1.8 (rev. 1.8.5)

### Notice of Electronic Filing

The following transaction was entered by Wax Jacobs, Justin on 1/6/2026 at 10:34 AM CST and filed on 1/6/2026

| | |
|---|---|
| **Case Name:** | Dela Torre v. Nippon Life Insurance Company of America |
| **Case Number:** | 1:25-cv-01483 |
| **Filer:** | Nippon Life Insurance Company of America |
| **WARNING: CASE CLOSED on 09/22/2025** | |
| **Document Number:** | 191 |

**Docket Text:**
**MEMORANDUM by Nippon Life Insurance Company of America in support of motion to enforce[190]** *the Court's February 13, 2025 Order Compelling Arbitration and Subsequent Directives to Arbitrate* **(Attachments: # (1) Affidavit, # (2) Exhibit A, # (3) Exhibit B, # (4) Exhibit C, # (5) Exhibit D, # (6) Exhibit E, # (7) Exhibit F, # (8) Exhibit G, # (9) Exhibit H, # (10) Exhibit I, # (11) Exhibit J, # (12) Exhibit K)(Wax Jacobs, Justin)**

**1:25-cv-01483 Notice has been electronically mailed to:**

Graciela Dela Torre &nbsp &nbsp gmestiza1@gmail.com

Joseph R. Jeffery &nbsp &nbsp jjeffery@cmn-law.com, jpalm@cmn-law.com

Justin Aaron Wax Jacobs &nbsp &nbsp j-waxjacobs@nipponlifebenefits.com

Robert Brunner &nbsp &nbsp robert.brunner@bclplaw.com, kathryn.farris@bclplaw.com, REC_KM_ECF_CHI@bclplaw.com

12.     In contravention of both the Court's February 13, 2025 Order and subsequent directives to arbitrate, PLAINTIFF filed a third lawsuit against NIPPON – and its Legal Counsel, Justin Wax Jacobs – on October 16, 2025 again seeking to circumvent what the PLAINTIFF described as "fake arbitration" by having the Court "[d]eclare that the ICDR arbitration is invalid." *Graciela Dela Torre v. Nippon Life Insurance Company of America, Justin Aaron Wax Jacobs*, 1:25-cv-012710, at Dkt. 1 (N.D.Ill. 2025). After an attempt to amend the Complaint, PLAINTIFF's third lawsuit was dismissed as barred by res judicata. *Id.* at Dkt. 13.

13.     Following the initiation of arbitration between the PARTIES, the case was administratively assigned by AAA staff to the AAA's International Centre for Dispute Resolution (ICDR). The ICDR is the international division of the AAA. See *About ICDR-AAA*, International Centre for Dispute Resolution (December 11, 2025) https://icdr.org/about_icdr. As a division of the AAA, the ICDR and American Arbitration Association are one in the same. The decision to assign the case to the ICDR was made unilaterally by AAA staff. As Sabriyah Samsudeen, ICDR Case Administrator, explained in response to Justin Wax Jacobs' inquiry into the matter in a February 3, 2025 email:

> "The case is administered by the ICDR fee schedule due to the international nexus of claimant's parent company being a Japanese corporation. The AAA's definition of international includes not only parties to the arbitration, but also controlling shareholders or parents [sic] companies that are from different countries." Exhibit D.

14.     On September 25, 2025, NIPPON submitted an amended demand for arbitration, attached as Exhibit E. The amended demand asserted five claims against the PLAINTIFF for breaches of the Agreement, including PLAINTIFF's motion to reopen *Dela Torre v. Nippon Life Insurance Company of America* 1:22-cv-07059 (N.D.Ill), and the filing of the current lawsuit. See Exhibit E.

4

 Gmail

Gracie Dlt <gmestiza1@gmail.com>

## Activity in Case 1:25-cv-01483 Dela Torre v. Nippon Life Insurance Company of America set motion and R&R deadlines/hearings

1 message

**usdc_ecf_ilnd@ilnd.uscourts.gov** <usdc_ecf_ilnd@ilnd.uscourts.gov>          Thu, Jan 8, 2026 at 8:49 AM
To: ecfmail_ilnd@ilnd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**Northern District of Illinois - CM/ECF NextGen 1.8 (rev. 1.8.5)**

### Notice of Electronic Filing

The following transaction was entered on 1/8/2026 at 8:49 AM CST and filed on 1/8/2026
**Case Name:**          Dela Torre v. Nippon Life Insurance Company of America
**Case Number:**          1:25-cv-01483
**Filer:**
**WARNING: CASE CLOSED on 09/22/2025**
**Document Number:** 192

**Docket Text:**
**MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's response, if any, to the motion to enforce [190] must be filed on or before January 20, 2026; reply due on January 27, 2026. Mailed notice. (cp, )**

**1:25-cv-01483 Notice has been electronically mailed to:**

Justin Aaron Wax Jacobs          j-waxjacobs@nipponlifebenefits.com

Robert Brunner          kathryn.farris@bclplaw.com, rec_km_ecf_chi@bclplaw.com, robert.brunner@bclplaw.com

Graciela Dela Torre          gmestiza1@gmail.com

Joseph R. Jeffery          jjeffery@cmn-law.com, jpalm@cmn-law.com

**1:25-cv-01483 Notice has been delivered by other means to:**

**SETTLEMENT AGREEMENT AND MUTUAL SPECIFIC RELEASE**

This Settlement Agreement and Mutual Specific Release ("Agreement") is entered into ~~as of December 14, 2023,~~ by and among Graciela Dela Torre ("Dela Torre") and Nippon Life Insurance Company of America ("Nippon"), effective as of the date of execution. Dela Torre and Nippon are collectively referred to herein as the "Parties," and individually as a "Party."

A. Graciela Dela Torre was insured under a group long term disability ("LTD") policy (hereinafter referred to as the "Policy"), Nippon policy number D20800 ~~D20800GLT Q953 (previously identified as GLT Q953),~~ issued by Nippon. Attached as Exhibit A

B. Dela Torre submitted claim 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 (the "Claim") to Nippon seeking disability payments pursuant to the LTD Policy. In June 2019, Nippon, through its claim administrator, determined Dela Torre to be disabled and eligible for monthly payments under the Policy.

C. In November 2021, Nippon, through its claim administrator, determined that Dela Torre was no longer disabled and therefore no longer eligible for LTD payments under the Policy. Nippon terminated all LTD payments to Dela Torre in November 2021.

D. Dela Torre internally appealed Nippon's November 2021 determination and termination. During the appellate process Dela Torre was given the opportunity to supplement her file and submit additional medical documentation to support her claim. After review, Nippon determined to uphold its determination and the termination of Dela Torre's disability payments and LTD benefits.

E. Following the appeal, Dela Torre filed an ERISA claim in the United States District Court for the Southern District of Florida challenging Nippon's determination to terminate her LTD benefits and disability payments. Dela Torre refiled the complaint in the

1

United States District Court for the Northern District of Illinois (the "Action) on December 14, 2022.

WHEREFORE, the Parties hereto, for good and adequate consideration, agree as follows:

1. <u>Settlement Payment to Dela Torre</u>.

    1.1    In addition to all amounts that may have been already paid pursuant to the Claim and Policy, Nippon shall pay Dela Torre another Ninety Thousand Dollars and Zero Cents ($90,000.00) ("Settlement Payment").

    1.2    The Settlement Payment shall be made <u>by delivering a check in that amount to Plaintiff's attorney Kevin E. Probst, made payable to "Graciela Dela Torre c/o Dabdoub Law Firm Trust Account" within 30</u> ~~21~~ ~~via a wire transfer such that it is received within 30~~ days of Dela Torre's execution of this Agreement and provision of same to Nippon, through its counsel. ~~The wire transfer instructions for issuance of payment are delineated and detailed in Exhibit 1 hereto attached~~.

2. <u>Mutual Specific Releases and Dismissal with Prejudice</u>.

    2.1    Upon the full execution of this Agreement, and the receipt of the Settlement Payment, and except as set forth in subparagraph 2.3 below, Dela Torre fully and forever irrevocably releases, remits, acquits, and discharges Nippon, its respective agents, attorneys, servants, legal representatives, distributors, dealers, suppliers, subsidiaries, parent entities, affiliates, predecessors, joint ventures, employees, directors, members, officers, successors, and assigns, and all other persons, firms, agencies, organizations, partnerships, corporations, or entities liable or who may be claimed liable, or who are or might be in privity

2

with same, for and from any and all executions, judgments, debts, liabilities, attorney's fees, appeals, claims, losses, expenses, liens, demands, damages, suits, controversies, proceedings, actions, and causes of action of any nature or description whatsoever, known or unknown, which are held, were held, may have been held, or may now or in the future be owned or held by or on behalf of Dela Torre, which arise from or related to the Claim and/or Policy.

2.2     Upon the full execution of this Agreement, and except as set forth in subparagraph 2.3 below, Nippon fully and forever irrevocably releases, remits, acquits, and discharges Dela Torre and her respective agents, attorneys, servants, legal representatives, distributors, dealers, suppliers, subsidiaries, parent entities, affiliates, predecessors, joint ventures, employees, directors, members, officers, successors, and assigns, and all other persons, firms, agencies, organizations, partnerships, corporations, or entities liable or who may be claimed liable, or who are or might be in privity with same, for and from any and all executions, judgments, debts, liabilities, attorney's fees, appeals, claims, losses, expenses, liens, demands, damages, suits, controversies, proceedings, actions, and causes of action of any nature or description whatsoever, known or unknown, which are held, were held, may have been held, or may now or in the future be owned or held by or on behalf of Nippon, which arise from or related to the Claim and/or Policy.

2.3     Upon full execution of this Agreement and receipt of the Settlement Payment, Dela Torre shall notify the United States District Court for the Northern District of Illinois that the Action is dismissed with prejudice and shall execute all other documents necessary to dismiss the Action in full, and provide Nippon's counsel notice of same within ten (10) business days.

3.     Representations and Warranties.

3

3.1     Dela Torre represents and warrants that she is the named beneficiary of the Policy, ~~she is the named~~ <u>she is the named party in the Claim, and</u> that her interest has not been assigned to any other person or entity and that no other person or entity has any interest with respect to her LTD claim.

3.2     The Parties each represent and warrant to the other that none of them nor any of their respective agents or representatives nor any other person or entity in order to induce any of the Parties to enter into this Agreement has made any promise, assurance, representation, inducement or warranty whatsoever, whether express or implied, which is not specifically set forth in this Agreement, and further acknowledge that this Agreement has not been entered into in reliance upon any promise, assurance, representation, inducement or warranty not expressly set forth in writing in this Agreement.

3.3     The Parties each represent and warrant to the other that they have received independent legal advice from their respective attorneys with respect to the advisability of executing this Agreement.

3.4     The Parties each represent and warrant to the other that they have the authority to enter into this Agreement and that any person executing this Agreement in a representative capacity is duly authorized to do so.

3.5     The Parties each represent and warrant to the other that they have read and understand this Agreement and that this Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of any party hereto.  The Parties hereby acknowledge that they have been represented in the negotiation and preparation of this Agreement by counsel of their own choice, and that they have read this Agreement and had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of the legal

4

effect of each and every provision herein.

3.6     The Parties agree to bear their own costs and attorneys' fees with regard to the Disputed Claims and the Action.  However, in the event of any litigation between ~~UCI~~ Dela Torre and Nippon to enforce the terms of this Agreement, or otherwise relating to or arising out of this Agreement, the prevailing party in such action shall be entitled to recover its attorney's fees and costs, including costs of appeal, and costs associated with collecting any resulting judgment. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

4.     Confidentiality

The Parties hereby understand and agree that their dispute, the negotiations leading up to this Agreement and the terms of this Agreement will be kept strictly confidential by the Parties and their counsel and that these terms have not previously been disclosed and shall not hereafter be disclosed to any other person except as permitted by this Agreement, or as required by law, including but not limited to the provisions of a regulatory order, subpoena, court order, or if necessary to enforce or implement the terms of this Agreement. However, this provision does not prevent a Party from discussing this Agreement with its attorney, tax advisor, insurer, financial consultant, banker, lender, accountant or their respective members, subject to said person(s) agreement to be bound by this provision or being subject to confidentiality. Nor does this Agreement preclude making legally required statements in its audited or other ~~publically~~publicly released financial statements. Notwithstanding and except as provided in the preceding, if

5

inquiry is made regarding this Agreement, or the disposition of the litigation, the Parties or their counsel may respond only that "any disputes between the Parties have been amicably resolved." or with a substantially similar statement. The covenants set forth in this section survive the execution and performance of this Agreement.

5.    Miscellaneous.

5.1    This Agreement is the compromise of disputed claims, and nothing herein is to be construed, considered or interpreted as an admission of liability or fault on the part of any party or the absence of liability by any party.  The execution of this Agreement by the Parties shall not be deemed an admission by any such Party of the truth of any of the claims made against such Party, and no rights shall inure to any third party from the obligations, representations and agreements of the Parties made herein except as expressly provided in this Agreement.

5.2    No supplement, modification, waiver or amendment of this Agreement shall be effective or binding unless executed in writing by all of the Parties to which it applies. No waiver of any of the provisions of this Agreement shall be deemed to be a waiver of any other provision, whether or not similar, nor shall any one waiver constitute a continuing waiver. No waiver shall be effective or binding unless executed in writing by the party(ies) making such waiver.

5.3    This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which shall together constitute but one and the same instrument.  For purposes of this Agreement, a fax or e-mailed signature will be deemed equivalent to an original signature.

5.4 If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions will nevertheless continue in force without being impaired or invalidated in any way.

5.5 Counsel for each party has participated in the preparation of this Agreement. This Agreement was subject to revision and modification by each party, and has been accepted and approved as to the final form by counsel for each party. Accordingly, any uncertainty or ambiguity existing in this Agreement shall not be interpreted against any party as a result of the manner of the preparation of this Agreement.

5.6 The warranties and representations made in this Agreement are deemed to survive the execution of this Agreement.

5.7 Time is of the essence with respect to this Agreement.

5.8 This Agreement shall be construed and interpreted in accordance with Illinois law.

IN WITNESS HEREOF, the undersigned have executed this Agreement as of the dates indicated below:

GRACIELA DELA TORRE

BY: _____
ITS: _____
DATE:_____

NIPPON LIFE INSURANCE COMPANY OF AMERICA

BY: _____
ITS: _____
DATE:_____

7

**DABDOUB LAW FIRM, P.A.**


By: _____    _____
    Kevin Probst                                                                                    Date
    Attorney for
    Graciela Dela Torre


**NIPPON LIFE INSURANCE COMPANY OF America**


By: _____    _____
    Justin Wax Jacobs                                                                          Date
    Attorney for
    Nippon Life Insurance Company of America

EXHIBIT A
EXHIBIT 1


Wire Transfer Instructions:

Bank Name:
City/State:
Branch Address:
Routing Transit Number:
Account Number:
Account Title:
FEID (SAC):

9